HINTON, ADMINISTRATOR *v.* BRYANT ET AL.

[No. 14,730. Filed May 31, 1934.]

*Ira M. Sharp,* for appellant.

*Edgar M. Blessing,* for appellee.

BRIDWELL, C. J.—Appellant, as administrator of the estate of Jacob Hinton, deceased, brought this action against the appellees to recover the possession of certain personal property alleged to have been owned by said Jacob Hinton at the time of his death. Appellees each filed an answer in general denial and also an affirmative paragraph of answer asserting ownership of the property in question in appellee, William Jean Bryant, by way of gift *causa mortis* from the said decedent. A reply in general denial to the affirmative paragraphs of answer closed the issues. The property involved in this controversy, and of which appellant sought to recover the possession, consisted of 22 shares of stock of the Ladoga Building, Loan, Fund and Savings Association alleged to be of the value of $2,200; a promissory note, secured by a real estate mortgage, of the alleged value of $1,000; a bank deposit in the Roachdale Bank of Roachdale, Indiana, of $23; a gold watch of the alleged value of $25; cash in pocket-book of decedent to the amount of $40; wearing apparel of the decedent and a certain wooden chest or box, with the key thereto. The cause was submitted to the court for trial

and at the close of the evidence was taken under advisement.

On the 28th day of September, 1931, the following general finding was made by the court: "That the plaintiff is entitled to recover possession from the defendants the sum of $23.00, being the amount of money deposited in the Roachdale Bank to the credit of Jacob Hinton on the date of the death of said decedent.

"The court further finds that the said plaintiff is entitled to the possession of the share of certificate in the Ladoga Building, Loan, Fund & Savings Association in the sum of $200.00 and which certificate is held by said bank as collateral for a loan of said decedent.

"The court further finds that the defendants are entitled to possession of all the certificates of stock in the Ladoga Building, Loan, Fund & Savings Association aggregating the sum of $2,000.00 and that said defendants are entitled to the possession of the note and mortgage, which note was dated on or about the 12th day of January, 1929, payable to the order of Jacob Hinton and signed by Earl H. Roberts and Marie M. Roberts and also the mortgage executed by the said Earl H. Roberts and Marie Roberts, both of said instruments running to Jacob Hinton and said mortgage being on the East half of the Northeast quarter of Section 23, Township 17 North of Range West situated in Montgomery County in the State of Indiana.

"The court further finds that said defendants are entitled to the possession of all the money which was in the pocketbook of said Jacob Hinton at the time of his death and that the defendants are entitled to the possession of the gold watch and the wooden chest with lock and key which the defendants took possession of shortly before the death of the said Jacob Hinton, deceased."

The judgment rendered on this finding is as follows: "It is therefore ordered, adjudged and decreed by the

court that the plaintiff recover the possession from the defendants the sum of $23.00 in money, the same being the money which was on deposit to the credit of said decedent at the time of decedent's death, and that the. plaintiff, as administrator of the estate of Jacob Hinton, deceased, is entitled to the possession of the certificate of stock of $200.00 in the Ladoga Building, Loan, Fund & Savings Association subject to any rights of the Roachdale Bank of Roachdale, Indiana.

"It is further ordered, adjudged and decreed by the court that the defendants are entitled to the possession of all the remaining certificates of shares of the Ladoga Building, Loan, Fund & Savings Association of Ladoga, Indiana, aggregating the sum of $2,000.00 and which certificates are now in the possession of said defendants.

"It is further ordered, adjudged and decreed that the defendants are entitled to possession of the pocket book and all the money contained therein which is now in possession of the defendants and that said defendants are also entitled to possession of a certain gold watch, described in plaintiff's complaint and the wooden chest described in plaintiff's complaint and which are now in the possession of the defendants.

"It is further ordered, adjudged and decreed by the court that the defendants pay to the plaintiff herein whatever sums are necessary to pay the debts of said decedent and the necessary costs of administration in addition to the assets in the hands of said administrator including said certificate of the Ladoga Building, Loan, Fund & Savings Association in said Roachdale Bank.

"It is further ordered, adjudged and decreed by the court that the defendants pay the costs of this action taxed at $........; all of which is fully, finally, ordered, adjudged and decreed."

Appellant, on October 27, 1931, in vacation, filed his motion for a new trial assigning as causes therefor

that the decision of the court is contrary to law, that the decision of the court is not sustained by sufficient evidence, and that the court erred in admitting in evidence, over his objection, defendants' Exhibits numbered three and six. This motion was overruled on January 27, 1932, and appellant excepted, and, on said day, filed his motion to modify the judgment in two particulars as follows: (1st) "By striking out and expunging therefrom all that part of said judgment which purports to award to the defendants, or either of them, any part of the personal property described in the complaint." (2nd) "That said judgment be so modified as to award to the plaintiff the personal property described in the complaint for the purpose of the proper administration of the estate of the said Jacob F. Hinton, deceased, and the payment of the debts and liabilities of the said Hinton and of his estate." This motion was overruled and appellant excepted. This appeal was thereafter perfected, the appellant assigning as errors that the court erred in overruling his motion for a new trial, and that the court erred in overruling his motion to modify the judgment.

Among the causes assigned for a new trial is alleged error in the admission of appellee's exhibits three and six in evidence, but there is no discussion or mention of any such error under appellant's "Propositions and Authorities" and the question is therefore waived.

Appellant earnestly insists that the evidence is not sufficient to sustain the decision and that it fails to establish a valid gift *causa mortis* to appellee, William Jean Bryant, for the reason that it is not shown that there was such a delivery of the property in controversy, either actual or constructive, as is required by law in order to constitute a valid gift.

The evidence, without conflict therein, shows that the

decedent, Jacob Hinton, became seriously ill on Sunday, March 30, 1930, and died from this sickness on April 1, 1930; that a physician was called to attend him on said Sunday and he was advised by said physician as to his serious condition, and knew that death was imminent; that he owned all the property described in the appellant's complaint herein when he was stricken, and continued to be the owner thereof until his death, unless he made a valid gift of the same to the appellee, William Jean Bryant, on Monday, March 31, 1930, the day before he died.

There is also evidence to prove that the deceased, at the time he was taken sick was residing in the home of one Martin near Danville, Indiana, and that he had brought with him to said home a wooden chest or box which he kept in the room he occupied and which, during his sickness and at the time of his death, was in said room and near to the foot of his bed; that this chest was equipped with a lock, and contained certain items of the personal property in controversy here; that on Monday, before his death on the following day, the decedent, with the knowledge that death was near, said to the appellee, Mason Bryant, in substance, that he had intended to give to him (Mason Bryant) all he had, but that he felt like he was "competent of making a living, and had his barber shop, and he was going to give it to his son;" that he mentioned some building and loan stock and a note of Earl Roberts who lived over near Ladoga; that he told appellee, Mason Bryant, that he wanted to be buried over on the hill at Ladoga, and wanted all his debts paid; that he (Mason Bryant) should pay his (the decedent's) debts and "the remainder belongs to Billie" (appellee, William Jean Bryant). On this same occasion the decedent also told the said Mason Bryant that the keys to his room and "box" were in one of his pocket books which were in

his trousers, and directed him to get said pocket books, which Bryant did; that as said Bryant approached the bed he opened the pocket books, one of which contained some money, the other the keys mentioned by decedent; that he (Bryant) then placed the pocket books in his own pocket, and thereafter retained possession of said keys.

It also appears from the evidence that the chest or box owned by the deceased remained at the foot of his bed from the time that Bryant obtained said keys until after his death; that on the day of the funeral said Bryant removed the same from the Martin home, and thereafter opened it with one of the said keys; that this chest or box contained some wearing apparel, certain certificates of stock in the Ladoga Building, Loan, Fund & Savings Association aggregating the sum of $2,000, and a mortgage on 80 acres of real estate executed by one Earl H. Roberts and his wife to the deceased, Jacob Hinton, to secure the payment of two promissory notes which the mortgagors had given to the decedent, on the 12th day of January, 1929; that appellee Mason Bryant attempted to make arrangements for the burial of the deceased in accordance with his expressed desire, but the undertaker whom he interviewed refused to proceed until letters of administration were issued on the decedent's estate; that he (said Bryant) then applied for and was granted letters of administration by the Hendricks Circuit Court, which letters were afterwards revoked on the application of a son of the deceased, the present administrator; that appellee, Mason Bryant, while acting as administrator of the estate went to the Roachdale Bank and received from said bank the money deposited there to the credit of the deceased, and also the promissory note for $1,000 payable to the decedent and which had been left with said bank for safe keeping, executing his receipt therefor as such administra-

tor. It is also undisputed that the decedent left surviving him seven children, with none of whom he had visited for many years; that he had at times lived in the home of the parents of appellee, Mason Bryant, and had for him and his infant son, the appellee, William Jean Bryant, a high regard.

It is apparent from the record in this case, and it is disclosed by the evidence without any conflict therein, that it was the purpose and intent of the deceased to dispose of his entire estate when he told appellee Mason Bryant to pay his debts, bury him on the hill over at Ladoga, and that the "remainder belongs to Billie." There was no attempt to give any one or more specific articles of the personal property, but the acts and declarations of the decedent shown by the evidence, conclusively establish the fact that it was the intent of said decedent first to have the assets of his estate used for the payment of his debts and the expenses of his burial, and that then, whatever was left, whether much or little, should belong to appellee, William Jean Bryant. There is no evidence that the deceased at any time told Mason Bryant what the box or chest contained, or that when he directed him to get the keys he gave or attempted to give the particular property therein contained to "Billie." He designated no property out of which his debts were to be paid, and none that should go to Billie without regard to his debts, but only spoke of his property in a general way.

Did the deceased take the proper steps, as required by law, to accomplish the purpose he had in mind? If not, the court is without power or authority to act for him, no matter how clearly his desire and intention may appear.

Gifts *causa mortis* have long been recognized and upheld by the courts generally, and while in many of the

decided cases it is said that such gifts are not favored in law, because of the opportunity they afford for the perpetration of frauds, yet, when the facts essential to consummate any such gift are clearly and satisfactorily shown, it can not be properly held that such gifts are contrary to public policy.

In the case of *Devol* v. *Dye* (1889), 123 Ind. 321, 24 N. E. 246, our Supreme Court said: "The concurrence of three things is essential to the consummation of a gift *causa mortis:* (1) The thing given must have been of the personal goods of the donor; (2) it must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady; and, (3) the possession of the thing given must have been actually, or constructively delivered to the donee, or to some one for his use, with the intention that the title should then vest conditionally upon the death of the donor, *leaving sufficient assets in addition to pay his debts."* (Our italics.)

We have no statutory law in Indiana defining or regulating gifts *causa mortis,* but our laws of descent, where one dies intestate, govern the transmission of all property rights; and, where one desires that, after his death, his property go to others than those who would receive it under the laws of descent, he must accomplish his purpose by compliance with our statutory laws as to wills. Nuncupative wills are authorized (Sections 3453 and 3454, Burns 1926, §§7-202, 7-203, Burns 1933, §§3374, 3375, Baldwin's 1934), but our statute provides that no such will shall be valid when more than the value of one hundred dollars is bequeathed, nor unless it be made in the last sickness of the testator, and the subject thereof be reduced to writing within fifteen days after it shall have been declared and proved by two competent witnesses

who shall have heard the testator, in effect, request some of those present to bear witness thereto. It can not be proved after six months from the death of the testator, nor until reasonable notice of the time and place of proving the same has been given as required by statute. (Sec. 3453, *supra*).

We are of the opinion that the facts proven in the instant case fail to establish a gift *causa mortis*. The claimed gift was not of any particular property, but of all the property owned by the deceased, which might be left, after the carrying out of his expressed wishes following his death; if all the property was required to pay his debts and defray the expenses of his funeral nothing would be left upon which any gift could operate. It was an attempt to dispose of the remainder of an estate to one who would not take under our laws of descent, and without compliance with our laws concerning the transmission of property by will. When an attempted gift *causa mortis* assumes the province of a will it is void. See, *Marshall* v. *Berry* (1866), 95 Mass. (13 Allen) 43; *Rule* v. *Fleming* (1926), 85 Ind. App. 487, 492, 152 N. E. 181.

The decision of the court is not sustained by sufficient evidence, and is contrary to law; the motion for a new trial should have been sustained.

The overruling of appellant's motion to modify the judgment is the other error assigned. By this motion appellant sought to have an entirely different judgment rendered, upon the facts proven. The office of any such motion is to make the judgment in harmony with the verdict or finding, as the case may be, and it cannot be made to perform the office of a motion for a new trial; it may be used to correct some matter of form in a judgment, but not to secure the substitution of a different one. There is no available error in this ruling. *Warrick* v. *Spry* (1912), 49 Ind.

App. 327, 97 N. E. 361; *Scheiring* v. *Baker* (1931), 202 Ind. 678, 177 N. E. 866.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.