In the Matter of the ESTATE OF Samuel J. DELLINGER, Sr., Deceased, Appellant–Petitioner,

v.

1st SOURCE BANK, Personal Representative, Appellee–Respondent.

No. 71A05–0111–CV–506.

Court of Appeals of Indiana.

July 30, 2002.

James R. Byron, Jacob S. Frost, Thorne Grodnik, LLP Elkhart, IN, Attorneys for Appellant.

Andrew P. Heck, Greta Roemer Lewis, Barnes & Thornburg, South Bend, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Robin Sue Conrad, Samuel Dellinger's daughter, appeals from the trial court's denial of her motion to contest Dellinger's will. We reverse and remand.

### Issues

Conrad presents two issues for our review which we restate as follows:

1) Whether the witness signatures in a will's self-proving clause also suffice as attesting witness signatures; and

2) Whether the self-proving clause in Dellinger's will was defective.

Because we find the first issue dispositive, we do not consider the second here.

### Facts and Procedural History

The facts most favorable to the judgment are that Dellinger was a patient in St. Joseph Catholic Hospital, South Bend, Indiana, on May 18, 1999. On that date, Dellinger's attorney, John Smarrella, met with Dellinger in his hospital room to gather information for the creation of Dellinger's will. Smarrella returned to the hospital on May 19, 1999, with the prepared will ready to be signed, but Dellinger was more ill that day and was unable to speak clearly or sign the will on his own. Through hand signals, Dellinger and Smarrella agreed that Smarrella would sign the will for Dellinger. Janet Szrom–Auel and Basil Tudor were present during this process and signed the will as witnesses. Pat Finley, Dellinger's sister, was also present in the hospital room on May 18 and 19. Dellinger died on May 20, 1999. His will disinherited his three children and left his property to a trust, the proceeds of which would go to his sister, Pat Finley, during her lifetime, and to St. Monica's Catholic Church after Finley's death.

Conrad filed a motion to contest Dellinger's will, alleging the will was not properly executed. After an evidentiary hearing, the trial court denied Conrad's motion and admitted the will to probate. Conrad then brought this appeal.

### Discussion and Decision

### I. Standard of Review

█ The trial court entered a general judgment denying Conrad's motion to contest the will. In reviewing general judgments issued in a civil bench trial, we ask only whether there is substantial evidence of probative value supporting the verdict on any legal theory, and we do not reweigh evidence or judge the credibility of witnesses. *Foman v. Moss*, 681 N.E.2d 1113, 1116 (Ind.Ct.App.1997). In examining the record, we consider only the evidence most favorable to the prevailing party along with all reasonable inferences to be drawn from it. *Id.* Moreover, as Conrad is appealing a negative judgment, the judgment of the trial court will only be reversed if it is contrary to law. *Fitch v. Maesch*, 690 N.E.2d 350, 352 (Ind.Ct.App.1998), *trans. denied.*

█ If a statute is ambiguous and its meaning is not clear from the words used, judicial construction is proper; in such case, the purpose and goal of judicial construction is to give effect to the intention of the legislature. *Patel v. Barker*, 742 N.E.2d 28, 31 (Ind.Ct.App.2001), *trans. denied.* A statute should be construed to accomplish the end for which it was enacted. *Id.* In construing a statute, the court must consider the whole act and, if possible, effect must be given to every word and clause therein. *Id.*

### II. Execution of Will

█ We first note that Dellinger's estate argued Conrad waived her argument regarding the improper execution of the will due to the need for two sets of signatures, as she presented it for the first time on appeal. We do not find this issue to be waived, as Conrad raised at trial the issue of the validity of the will's execution. Therefore, we address this issue on the merits.

Conrad first argues the will was not properly executed because the witnesses signed the will only once in a self-proving clause at the end of the will. Conrad argues the witnesses must sign *twice* for a valid, self-proving will: first, in an attestation clause pursuant to Indiana Code section 29–1–5–3(a)(2), and second, for the self-proving clause pursuant to section 29–1–5–3(b). Indiana Code section 29–1–5–3(a) provides that:

(a) The execution of a will, other than a nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) The testator, in the presence of two (2) or more attesting witnesses, shall signify to them that the instrument is the testator's will and either:

(A) sign the will;

(B) acknowledge the testator's signature already made; or

(C) at the testator's direction and in the testator's presence have someone else sign the testator's name.

(2) The attesting witnesses must sign in the presence of the testator and each other.

Section 29–1–5–3(b) provides that:

(b) An attested will may at the time of its execution or at any subsequent date be made self-proved by the acknowledgment of the will by the testator and the verifications of the witnesses, each made under the laws of Indiana and evidenced by the signatures of the testator and witnesses attached or annexed to the will in form and content substantially as follows:

UNDER PENALTIES FOR PERJU-RY, we, the undersigned testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument declare:

(1) that the testator executed the instrument as the testator's will;

(2) that, in the presence of both witnesses, the testator signed or acknowledged the signature already made or directed another to sign for the testator in the testator's presence;

(3) that the testator executed the will as a free and voluntary act for the purposes expressed in it;

(4) that each of the witnesses, in the presence of the testator and of each other, signed the will as a witness;

(5) that the testator was of sound mind when the will was executed; and

(6) that to the best knowledge of each of the witnesses the testator was, at the time the will was executed, eighteen (18) or more years of age or was a member of the armed forces or of the merchant marine of the United States or its allies....

Finally, section 29–1–5–3(d) provides that:

(d) This subsection applies to all wills, regardless of the date a will is executed. A will is presumed to be self-proved if the will includes an attestation clause signed by the witnesses that indicates that:

(1) the testator signified that the instrument is the testator's will;

(2) in the presence of at least two (2) witnesses, the testator signed the instrument or acknowledged the testator's signature already made or directed another to sign for the testator in the testator's presence;

(3) the testator executed the instrument freely and voluntarily for the purposes expressed in it;

(4) each of the witnesses, in the testator's presence and in the presence of all other witnesses, is executing the instrument as a witness;

(5) the testator was of sound mind when the will was executed; and

(6) the testator is, to the best of the knowledge of each of the witnesses, either:

(A) at least eighteen (18) years of age; or

(B) a member of the armed forces or the merchant marine of the United States or its allies.

In response, Dellinger's estate argues that under 29–1–5–3(d), only one set of signatures to a will is necessary, and the witness signatures in the self-proving clause of Dellinger's will satisfied that requirement. The estate argues for an interpretation of subsection (d) that would allow it to be read as an alternative to subsection (b); in other words, under the estate's interpretation, a person making a will has the option to have the witnesses sign twice under subsections (a) and (b) or to have witnesses sign only once under subsection (d). "The actual contents of the clauses provided for under I.C. § 29–1–5–3(b) and I.C. § 29–1–5–3(d) are very similar, indicating that the legislature must have intended to allow for an alternative to the self-proof steps in subsection (b) when it enacted subsection (d). Any other reading would render subsection (d) redundant." Brief of Appellee at 12. We agree with the estate that subsections (b) and (d) are sufficiently similar as to be ambiguous; thus, we are left to determine the intent of the legislature in enacting these two similar provisions.

First, we are mindful of the rule that effect must be given to every word and clause when we interpret a statute. *Patel,* 742 N.E.2d at 31. We have included section 29–1–5–3(b) in its entirety above; however, we now note it provides in relevant part that "[a]n *attested will* may at

the time of its *execution* ... be made self-proved ... [by including certain language] substantially as follows: UNDER PENALTIES FOR PERJURY, we, the undersigned testator and the undersigned witnesses, respectively, *whose names are signed to the attached or foregoing instrument....*" (Emphasis added.) The various phrases we emphasized in this section refer to self-proving of a will that is *already attested* by witnesses.[1] Thus, there must necessarily be two sets of signatures on a will under this subsection: one for the attestation clause, and one for the self-proving clause. Dellinger's will has only one set of signatures, namely those in the self-proving clause. Therefore, under subsection (b), the will is not validly attested.

Since the estate makes its argument for validity under subsection (d) of the statute, we now consider the meaning of that subsection. The previous version of Indiana Code section 29–1–5–3(c) explicitly provided for the alternative approach suggested by the estate.[2] Prior to changes to the statute in 1989, subsection (c) read as follows: "As an alternative to the method of execution and self-proof set out in subsections (a) and (b), a will may be *executed, witnessed, and self-proved* by the signatures of the testator and witnesses on a document that substantially contains [the list of six factors existing in the current versions of subsections (b) and (d) of the statute]." Historical and Statutory Notes to I.C. § 29–1–5–3 (emphasis supplied). The legislature eliminated the "alternative" phrase when enacting the current version of subsection (d) of the statute in 1989; we must presume this omission was intentional.

In looking at even earlier history of the statute, we find that the 1975 revisions to the statute were the first to create a mechanism by which a will could be made self-proved; no such provision existed in previous versions of the statute. Historical Notes to I.C. § 29–1–5–3. Current subsection (d) provides in pertinent part that "[t]his subsection applies to all wills, *regardless of the date a will was executed.* A will is presumed to be self-proved if the will includes an attestation clause signed by the witnesses that indicates [the six statutory factors].". (Emphasis supplied.) Because we must attempt to give effect to every word in the statute, we hold the emphasized phrase to be a "grandfathering" clause allowing a self-proving clause to be added to wills executed even earlier than the 1975 statutory revision. Thus, subsection (b) is distinguishable from subsection (d). Furthermore, because the statute includes the emphasized phrase regarding the date of execution, we presume the legislature intended the subsection to apply to wills previously executed, necessarily implying wills previously attested. Therefore, neither subsection allows for only one set of signatures on a will, and the will is also not validly executed under subsection (d) of the statute. Because the witnesses only signed the will once in a self-proving clause and did not separately attest as required by Indiana Code section 29–1–5–3, Dellinger's will was not validly executed.

Other jurisdictions have considered the issue of whether one or two sets of signatures are required when a will includes a self-proving clause. Both Conrad and the estate cite a number of cases from other

---

1. Attestation is "[t]he act of witnessing an instrument in writing, at the request of the party making the same, and subscribing the name of the witness in testimony of such fact." Black's Law Dictionary, Sixth Edition, 1990.

2. After the changes to the statute in 1989, the text of former subsection (c) was substantially included in the revised statute as current subsection (d).

states for us in support of their respective positions on this issue. However, as the estate correctly notes, all of the cases Conrad cites have since been superseded by statute.[3] It appears that now a majority of jurisdictions have adopted the approach of allowing the witness signatures in a self-proving clause to also serve as witness signatures for purposes of attestation.[4] But, until our legislature explicitly provides otherwise, we must assume it did not intend to allow the signatures in a will's self-proving clause to also suffice for the attestation clause of that same will.[5]

### Conclusion

The trial court erred when it dismissed Conrad's petition to contest Dellinger's will. We reverse and remand with instructions for the trial court to grant Conrad's petition and to proceed accordingly.

Reversed and remanded.

BAILEY, J., and NAJAM, J., concur.

---

**3.** Conrad cites *Matter of Sample*, 175 Mont. 93, 572 P.2d 1232 (1977), which has since been superseded by Montana Code section 72–2–524 (2001). She cites *Estate of Ricketts*, 54 Wash.App. 221, 773 P.2d 93 (1989), which was superseded by Washington Revised Code section 11.12.020(1) (2002). Finally, Conrad herself concedes the line of Texas cases she cites were superseded by statute; *see In re Estate of Livingston*, 999 S.W.2d 874, 876 (Tex.Ct.App.1999).

**4.** See Christopher Vaeth, Annotation, *Proper Execution of Self–Proving Affidavit as Validat-*

*ing or Otherwise Curing Defect in Execution of Will Itself*, 1 A.L.R.5th 965 (1992), for a summary of cases from several jurisdictions adopting the majority rule.

**5.** We are compelled to note that the attorneys for the estate could have easily avoided the issues in this appeal with better drafting. Moreover, it does not appear from the record that Dellinger's attorney ever talked to him alone, out of the presence of his sister, to confirm the bequest to his sister he made on his deathbed; this is a questionable practice at best.