**In the Matter of the ESTATE OF Samuel J. DELLINGER, Sr., Deceased, Appellant–Petitioner,**

v.

**1ST SOURCE BANK, Personal Representative, Appellee–Respondent.**

No. 71A05–0111–CV–506.

Court of Appeals of Indiana.

May 8, 2003.

Transfer Granted May 20, 2003.

James R. Byron, Jacob S. Frost, Thorne, Grodnick, LLP, Elkhart, IN, for Appellant.

Michael Rosiello, John R. Maley, Barnes & Thornburg, Indianapolis, IN, Andrew P. Heck, Greta Roemer Lewis, Barnes & Thornburg, South Bend, IN, for Appellee.

UAW–GM Legal Services Plan, UAW–Ford Legal Services Plan, UAW–Daimler Chrysler Legal Services Plan, Timothy O'Connell, Indianapolis, IN, for Amici Curiae.

## OPINION ON REHEARING

ROBB, Judge.

This decision is being issued to correct some factual misstatements in the original decision upon a Petition for Rehearing, handed down January 23, 2003, and located at 781 N.E.2d 1186. This decision does not alter the timetable for either party to appeal to the Supreme Court of Indiana. Therefore, in the event that a party wished to appeal to our supreme court, the Petition to Transfer in this case was still due on February 22, 2003. Ind. Appellate Rule 57(C)(2) (stating that a party has thirty days in which to file a Petition for Transfer following the Court of Appeals' disposition of a Petition for Rehearing). The decision at 781 N.E.2d 1186 is vacated and replaced with this decision.

■■■ First Source Bank (the Bank), as personal representative for the estate of Samuel J. Dellinger, Sr., petitions this court for rehearing of our published opinion dated July 30, 2002.[1] *See In Re Estate*

---

1. Amici curiae UAW–GM Legal Services Plan, UAW–Ford Legal Services Plan and UAW–DaimlerChrysler Legal Services Plan (collectively, "UAW") tendered a Brief on August 27, 2002, in Support of [the Bank's] Petition for Rehearing. We grant UAW's Petition for

Amicus, but only to illustrate more clearly the purpose of an amicus curiae brief. UAW's brief adopted in sum the arguments made in a separate amicus curiae brief. We note that the purpose of an amicus curiae brief is to add insights which the party with whom you

*of Dellinger,* 771 N.E.2d 1271 (Ind.Ct.App. 2002).[2] In that opinion, we held that the trial court erred in dismissing Robin Sue Conrad's petition to contest Dellinger's will. We grant the Bank's petition for rehearing and vacate our previous opinion.[3]

### Facts and Procedural History

Dellinger was a patient in St. Joseph Catholic Hospital, South Bend, Indiana, on May 18, 1999. On that date, Dellinger's attorney, John Smarrella, met with Dellinger in his hospital room to gather information for the creation of Dellinger's will. Smarrella returned to the hospital on May 19, 1999, with the prepared will ready to be signed, but Dellinger was more ill that day and was unable to speak clearly or sign the will on his own. Through hand signals, Dellinger and Smarrella agreed that Smarrella would sign the will for Dellinger. Janet Szrom–Auel and Basil Tudor were present during this process and signed the will as witnesses. Pat Finley, Dellinger's sister, was also present in the hospital room May 18 and 19. Dellinger died on May 20, 1999. His will disinherited his three children and left his property to a trust, the proceeds of which would go to Finley during her lifetime and to St. Monica's Catholic Church after her death.

Conrad, one of Dellinger's children, filed a motion to contest Dellinger's will, alleging that the will was not properly executed. After an evidentiary hearing, the trial court denied Conrad's motion and admitted the will to probate. Conrad then brought her appeal. In a published opinion, we reversed the decision of the trial court, finding that, under the circumstances presented to us, one set of signatures was insufficient to admit Dellinger's will to probate. *See Dellinger,* 771 N.E.2d at 1275–76. The Bank filed a Petition for Rehearing.

### Discussion and Decision

### I. Standard of Review

The trial court entered a general judgment denying Conrad's motion to contest the will. In reviewing general judg-

---

side is not making. *See* Ind. Appellate Rule 46(E). Another way to phrase this is that the purpose of an amicus curiae brief is to state something the parties have failed to state. Filing a brief just to add another party to an argument and adopting in sum the argument made by another amicus curiae brief is not the purpose of petitioning to be an amicus. UAW added no new insight to the discussion in this case except for its unsupported estimate of the number of wills in Indiana which may be invalidated if this court does not reverse its previous decision. We do not find this compelling. Additionally, we note that UAW may wish to be more careful in the future to reference only briefs which are actually filed with this court. Therefore, UAW's Petition for Amicus is granted, but it has added nothing new to this discussion.

**2.** We note that the Indiana State Bar Association issued several alerts to its members regarding this decision. Although it has noted it was merely a notification of the decision to its members, the content of the alerts suggests otherwise. This court has always been willing to re-examine its orders and frequently grants rehearings, sometimes to reverse our previous orders. We find this call to arms to be counter-productive as it puts this court into a quandary. If we change our opinion, it is seen that we have caved to the pressure. If we do not change, it is considered that we did not listen to the arguments. Moreover, the cost to correct wills in contravention of an appellate decision is not a proper basis on which to argue for a particular outcome. This kind of action makes for ineffective appellate advocacy.

**3.** Motions for Leave to Appear Amici Curaie and to submit briefs were filed with the Clerk in this matter. "The proposed amicus curiae shall tender or file its amicus curiae brief within the time allowed the party with whom the proposed amicus curiae is substantively aligned." Ind. Appellate Rule 41(C). Accordingly, the brief should be tendered to the Clerk at the same time the motion for leave to appear amicus curaie is filed.

ments issued in a civil bench trial, we ask only whether there is substantial evidence of probative value supporting the judgment on any legal theory, and we do not reweigh the evidence or judge the credibility of witnesses. *Foman v. Moss,* 681 N.E.2d 1113, 1116 (Ind.Ct.App.1997). In examining the record, we consider only the evidence most favorable to the prevailing party along with all reasonable inferences to be drawn from it. *Id.* Moreover, as Conrad is appealing a negative judgment, the judgment of the trial court will only be reversed if it is contrary to law. *Fitch v. Maesch,* 690 N.E.2d 350, 352 (Ind.Ct.App. 1998), *trans. denied.*

In support of its Petition for Rehearing, the Bank contends that we erred in reversing the trial court's dismissal of Conrad's petition to contest because our construction of Indiana Code section 29–1–5–3(d) is: 1) contrary to express legislative intent; 2) violates longstanding principles of Indiana Probate Law; and 3) violates Indiana rules of statutory construction. Therefore, the Bank requests that we grant the Petition for Rehearing and affirm the decision of the trial court.[4]

We note initially that we have been accused of placing form over substance in our prior opinion. We believe that interpretation of a will is a time for placing form over substance because the will is typically interpreted after the death of the testator. Therefore, rather than argue over the testator's intentions, we look to what the testator accomplished through the instrument created.

The requirement that a testator follow the statutory requirements for the creation and execution of a will has long been established. *See Hinton v. Bryant,* 190 N.E. 554, 557, 99 Ind.App. 38, 46 (1934). (In Indiana, "where one desires that, after his death, his property go to others than those who would receive it under the laws of descent, he must accomplish his purpose by compliance with our statutory laws as to wills."). The right to transmit title to property by descent or will is a creature of the law-making power. *Breadheft v. Cleveland,* 110 N.E. 662, 662, 184 Ind. 130, 137 (1915). The right to make a will is statutory, and every will, to be valid, must conform to the formalities and requirements of the statutes concerning wills. *Pfaffenberger v. Pfaffenberger,* 127 N.E. 766, 767, 189 Ind. 507, 511 (1920). Having the intention to create a will is not sufficient to make a document a valid and binding testamentary instrument. *Hinton,* 190 N.E. at 557.

"In Indiana, there is no such thing as a substantially correctly executed will. Either the will meets the legislative requirements or it is void." *Keener v. Archibald,* 533 N.E.2d 1268, 1270 (Ind.Ct. App.1989), *trans. denied.* "[F]or a will to exist the statutory mandates set forth at IC 29–1–15–1 et seq. must be satisfied. In the absence of execution in the form prescribed by law there is no will." *Estate of Voelker,* 396 N.E.2d 398, 399, 182 Ind.App. 650, 652 (1979). Therefore, the interpretation of wills is one time when the law

---

4. The Bank filed a seventy-eight-page addendum in this case. Conrad filed a Motion to Strike the Addendum because it exceeds the fifty-page limit. *See* Ind. Appellate Rule 46(H) ("An Addendum to Brief may not exceed fifty (50) pages in length and should ordinarily be much shorter in length.") The Bank filed a Response brief in which it requested permission to file a substitute Addendum which would not exceed fifty pages.

While we admonish the Bank in the future to follow more precisely the Indiana Appellate Rules and not to file unnecessary materials, we have been able to sift through the materials presented in the original Addendum to find the relevant information. Therefore, we do not feel that there is a need to strike the Addendum or for the Bank to file a substituted Addendum. Therefore, the Motion to Strike is denied.

expressly states that form must come over substance.

■ Conrad argues that the will was not properly executed because the witnesses signed the will only once in a self-proving clause at the end of the will. She argues the witnesses must sign twice for a valid, self-proving will: first, in an attestation clause pursuant to Indiana Code section 29–1–5–3(a)(2), and second, for the self-proving clause pursuant to section 29–1–5–3(b). The Bank, however, attempted to admit the will to probate through section 29–1–5–3(d). The confusion seems to center over the distinction between sections 29–1–5–3(b) and 29–1–5–3(d) [5], so we commence the challenge of analyzing these subsections, keeping in mind that effect must be given to every word and clause when we interpret a statute.[6] *See Patel v. Barker,* 742 N.E.2d 28, 31 (Ind.Ct.App. 2001), *trans. denied.*

First, we note that Indiana Code section 29–1–5–3(a) provides that:

(a) The execution of a will, other than a nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) The testator, in the presence of two (2) or more attesting witnesses, shall signify to them that the instrument is the testator's will and either:

(A) sign the will;

(B) acknowledge the testator's signature already made; or

(C) at the testator's direction and in the testator's presence have someone else sign the testator's name.

(2) The attesting witnesses must sign in the presence of the testator and each other.

Indiana Code section 29–1–5–3(b) provides that:

(b) An attested will may at the time of its execution or at any subsequent date be made self-proved by the acknowledgment of the will by the testator and the verifications of the witnesses, each made under the laws of Indiana and evidenced by the signatures of the testator and witnesses attached or annexed to the will in form and content substantially as follows:

UNDER PENALTIES FOR PERJURY, we, the undersigned testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument declare:

---

5. Section 29–1–5–3(c) is not discussed because it states solely the requirements for the admissibility of a videotape as evidence when attempting to prove a will. There is no discussion of a videotape in the present case, so subsection (c) is not relevant here.

6. The Bank states that there has been universal consensus among commentators that section 29–1–5–3(d) permits attestation and presumptive self-proof of a will with a single set of witness signatures. Appellee's Petition for Rehearing at 3. We find that the only thing universal regarding section 29–1–5–3(d) is confusion. The Bank cites books and Indiana Continuing Legal Education Forum (ICLEF) presentations to illustrate that some believe that a single set of signatures can be suffi-

cient. We, in turn, have researched and found several current examples, many from the same sources, where the self-proving affidavit is used only with two sets of signatures. *See* Elizabeth A. Schlueter, "Administrative Provisions in the Will" *in Basic Will Drafting and Planning,* ICLEF, May 23, 2002, at Form I "Simple Will"; John S. Rowe, "Simple? Wills" *in Planning Your First Will / Living Trust Under $675K,* ICLEF, July 20, 2000, at 9 ("Self-proving provisions appear immediately after the attesting witnesses' signatures in Forms 1, 14, and 16."). Additionally, we note that both of the bar review courses currently being taught in Indiana suggest that two sets of signatures are required to self-prove a will in Indiana.

(1) that the testator executed the instrument as the testator's will;

(2) that, in the presence of both witnesses, the testator signed or acknowledged the signature already made or directed another to sign for the testator in the testator's presence;

(3) that the testator executed the will as a free and voluntary act for the purposes expressed in it;

(4) that each of the witnesses, in the presence of the testator and of each other, signed the will as a witness;

(5) that the testator was of sound mind when the will was executed; and

(6) that to the best knowledge of each of the witnesses the testator was, at the time the will was executed, eighteen (18) or more years of age or was a member of the armed forces or of the merchant marine of the United States or its allies.

_____

Testator

_____

Witness

_____

Witness

_____

Date

Finally, section 29–1–5–3(d) provides that:

(d) This subsection applies to all wills, regardless of the date a will is executed. A will is presumed to be self-proved if the will includes an attestation clause signed by the witnesses that indicates that:

(1) the testator signified that the instrument is the testator's will;

(2) in the presence of at least two (2) witnesses, the testator signed the instrument or acknowledged the testator's signature already made or directed another to sign for the testator in the testator's presence;

(3) the testator executed the instrument freely and voluntarily for the purposes expressed in it;

(4) each of the witnesses, in the testator's presence and in the presence of all other witnesses, is executing the instrument as a witness;

(5) the testator was of sound mind when the will was executed; and

(6) the testator is, to the best of the knowledge of each of the witnesses, either:

(A) at least eighteen (18) years of age; or

(B) a member of the armed forces or merchant marine of the United States or its allies.

Ind.Code § 29–1–5–3. Subsections (b) and (d) appear similar in language.

Section 29–1–5–3(d) sets forth the requirements for self-proving a will. The testator must signify that the instrument is his will; the testator must sign in the presence of two witnesses; the testator must have executed the instrument freely and voluntarily; each of the witnesses must be executing the instrument as a witness; the testator must have been of sound mind when the will was executed; and the testator must be of age to create a will. The language in section 29–1–5–3(b) almost mirrors this language with two important distinctions. First, there is a distinction in the role the witnesses are playing. Subsection (b)(4) states: "that each of the witnesses, in the presence of the testator and of each other, _signed the will as witnesses._" Subsection (d)(4) states: "each of the witnesses, in the testator's presence and in the presence of all other witnesses, _is executing the instrument as a witness._" Second, subsection (b) starts with the words, "An attested will . . ."; subsection (d) "applies to all wills."

Therefore, subsection (b) applies only when the witnesses are verifying a will to which they have already attested while subsection (d) applies when the witnesses are executing the will in a single attestation clause.

Taken together, these minor distinctions have a major impact. Under subsection (b), a self-proving provision can be added to an executed will regardless of when the will was executed. However, before using subsection (b), the will must have already been executed. Therefore, under subsection (b), a will cannot be self-proved with one set of signatures. One set of signatures is necessary for the execution of the will; a second is required for the self-proving clause.

Under subsection (d), however, a will may be executed and self-proved with one set of signatures. The language of (d)(4) indicates that, if a testator wants to self-prove with only one set of signatures, the will must be executed and self-proved at the same time. And only when the testator is attempting to execute and self-prove at the same time under subsection (d) is one set of signatures sufficient.

The Bank argues that Dellinger intended to execute the will under subsection (d). However, a closer look at the purported will requires that it be construed under subsection (b) as it uses the language of subsection (b):

> We, the undersigned Testator and the undersigned witnesses, respectively, *whose names are signed to the foregoing instrument,* declare that: (1) the Testator executed the foregoing instrument, consisting of five (5) typewritten pages, as his Will; (2) in the presence of all witnesses, the Testator signed the foregoing Will; (3) the Testator executed the Will as his free and voluntary act for the purposes expressed in it; (4) *each of the witnesses, in the presence of the Testator and of each other, signed the*

*Will as witness;* (5) the Testator was of sound mind when the Will was executed; and (6) to the best knowledge of each of the witnesses the Testator was, at the time the Will was executed, eighteen (18) or more years of age.

Exhibit A to Petitioner's Exhibit 1 (emphasis added). The language in the will clearly tracks subsection (b) rather than subsection (d). Therefore, before the purported will could be self-proved, it had to be properly executed. The signatures of the testator and at least two attesting witnesses were required for the proper execution of this will. Clearly, they self-proved an instrument which had not been executed or attested to. Because the will in question uses language from subsection (b) instead of subsection (d), it cannot be executed and self-proved with only one set of signatures. These subsections are not interchangeable. "[T]here is no such thing as a substantially correctly executed will." *Keener,* 533 N.E.2d at 1270.

The question remains whether Subsection (b) can be construed as a de facto attestation clause. It cannot. On its face, Subsection (b) is not an attestation clause but a self-proving provision secondary to an attestation clause that, here, was never executed. Subsection (b) fails for lack of an antecedent, namely, an attested will, which is a statutory condition precedent. The plain meaning of Subsection (b) is self-evident. Only by disregarding the clear language of Subsection (b) can we convert (b) into an attestation clause.

Here, we are not presented with an executed will and asked whether the signatures are sufficient to satisfy the statutory requirements for proving the will. Rather, we are presented with a document which never met the requirements for an executed will. Even the inclusion of a self-proving clause cannot change the fact that the will was never executed according to law.

*Conclusion*

The trial court erred when it dismissed Conrad's petition to contest Dellinger's will. We reverse and remand with instructions for the trial court to grant Conrad's petition and to proceed accordingly.

Reversed and remanded.

NAJAM, J., and BAILEY, J., concur.