**In the Matter of the ESTATE OF Samuel J. DELLINGER, Sr., Deceased, Appellant (Petitioner Below),**

v.

**1ST SOURCE BANK, as Personal Representative, Appellee (Respondent Below).**

**No. 71S05–0305–CV–208.**

Supreme Court of Indiana.

Aug. 26, 2003.

James R. Byron, Jacob S. Frost, Elkhart, IN, Attorneys for Appellant.

Michael Rosiello, Peter J. Rusthoven, John R. Maley, Deborah Pollack–Milgate, Indianapolis, IN, Andrew P. Heck, Greta Roemer Lewis, South Bend, IN, Attorneys for Appellee.

Jeffry A. Lind, Terre Haute, IN, Jeffrey B. Kolb, Vincennes, IN, George N. Bewley, Jr., Fort Wayne, IN, Diane Hubbard Kennedy, Marc A. Hetzner, Indianapolis, IN, James W. Martin, Merrillville, IN, J. Gregory Shelley, G. Pearson Smith, Jr., Indianapolis, IN, Richard B. Urda, Jr., South Bend, IN, Amici Curiae Indiana State Bar Association.

Milton O. Thompson, Indianapolis, IN, Amicus Curiae The Indianapolis Foundation.

Eric Manterfield, Indianapolis, IN, Amicus Curiae Indiana Symphony Society.

Gordon D. Wishard, Kevin M. Alerding, Indianapolis, IN, Amicus Curiae University of Indianapolis.

Hans S. Steck, Indianapolis, IN, Amicus Curiae Children's Museum of Indianapolis.

Patircia Polis McCrory, Indianapolis, IN, Amicus Curiae Indianapolis Museum of Art and Kiwanis International Foundation, Inc.

Timothy J. O'Connell, Indianapolis, IN, Amici Curiae UAW Legal Services Plan, UAW Ford Legal Services Plan, UAW–Daimlerchrysler Legal Services Plan.

### ON PETITION FOR TRANSFER

BOEHM, Justice.

We hold that a single signature of each of two witnesses in the presence of each other and of the testator may serve to witness a will and also to self-prove it. That is what occurred here. Accordingly, we affirm the trial court's holding that the will in this case was properly admitted to probate.

### Factual and Procedural Background

On May 18, 1999, Samuel Dellinger, Sr., met with his attorney, John Smarrella, in St. Joseph Catholic Hospital where Dellinger was a patient. Dellinger directed preparation of a new will that would disinherit Dellinger's children and leave his house to his sister and his entire remaining estate to a trust for his sister during her lifetime and to St. Monica's Catholic Church after her death. When Smarrella returned to the hospital the next day, Dellinger was unable to speak clearly and could not sign the new will on his own. Through hand signals, he indicated that his attorney was authorized to sign the will for him and Smarrella did so. Smarrella and two others who were present also signed the document. Dellinger died on May 20, 1999.

The will was admitted to probate on June 3, 1999. Dellinger's daughter, Robin Conrad, filed a will contest, contending that the will was not properly witnessed

and that Dellinger was not competent to execute a will on the day before he died. After a bench trial, the trial court upheld the will. Conrad appealed and the Court of Appeals reversed, concluding that the will was not properly witnessed. We previously granted transfer and now affirm the trial court.

### Standard of Review

Conrad raises only the claim that the will was not properly witnessed. She does not contest Dellinger's competency. Nor does she raise any claim based on the attorney's signing for Dellinger. As the party contesting the will, Conrad had the burden of proof below. She is appealing from a general judgment of the trial court. Accordingly, we view the evidence in the light most favorable to the appellee. *Ind. Dep't Envtl. Mgmt. v. RLG, Inc.,* 755 N.E.2d 556, 559 (Ind.2001).

### I. Validity of the Will

The will is a five-page document. The first four pages consist of dispositive provisions and a signature line for "Samuel J. Dellinger, Sr., Testator" bearing a handwritten "Samuel J. Dellinger, Sr., by John C. Smarrella." The fifth page is manually signed "Samuel J. Dellinger, Sr., by John C. Smarrella" above a signature line subscribed "Samuel J. Dellinger, Sr." Under the heading "Witnesses," the fifth page also bears the signatures of Smarrella in his individual capacity and two other individuals. The fifth page begins with typewritten text above all four of these signatures. It reads, in its entirety:

> We, the undersigned Testator and the undersigned witnesses, respectively, whose names are signed to the foregoing instrument, declare that: (1) the Testator executed the foregoing instrument, consisting of five (5) typewritten pages, as his Will; (2) in the presence of all witnesses, the Testator signed the fore-

going Will; (3) the Testator executed the Will as his free and voluntary act for the purposes expressed in it; (4) each of the witnesses, in the presence of the Testator and of each other, signed the Will as witness; (5) the Testator was of sound mind when the Will was executed; and (6) to the best knowledge of each of the witnesses, the Testator was, at the time the Will was executed, eighteen (18) or more years of age.

Indiana Code section 29–1–5–3(a) provides:

(a) The execution of a will, other than a nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) The testator, in the presence of two (2) or more attesting witnesses, shall signify to them that the instrument is the testator's will and either:

(A) sign the will;

(B) acknowledge the testator's signature already made; or

(C) at the testator's direction and in the testator's presence have someone else sign the testator's name.

(2) The attesting witnesses must sign in the presence of the testator and each other.

There was testimony that Dellinger, by hand signals, indicated that the document was his will and directed his attorney to sign it for him. This satisfied the condition of subsection (a)(1) by meeting the alternative means of signature by the testator afforded by subsection (a)(1)(C). The witnesses testified that they signed page five in Dellinger's presence and in the presence of each other. This satisfied the condition of subsection (a)(2). Because both subsections (1) and (2) of section 3(a) are satisfied, the will was properly executed and attested.

■ Conrad advances the ingenious but ultimately flawed contention that the signatures on page five constituted an attempt at self-proof, but did not evidence witnessing of the will. The Court of Appeals agreed. We do not. First, and most straightforwardly, the signatures appear on page five of the instrument. That page recites that Dellinger "executed the foregoing instrument, consisting of five (5) typewritten pages, as his Will." This plainly includes page five in that count and thereby asserts that page five is a part of the will. The signatures of the witnesses appear on that page. We therefore, syllogistically, have a will, signed by Dellinger, and signed by the witnesses, all in the presence of each other. That satisfies all formal conditions of subsections (a)(1) and (2). If one accepts the testimony of the attorney and the witnesses as we must in an appeal from a general judgment, these facts also establish that the witnesses believed they were witnessing Dellinger's will, and believed he wanted them to do so.

We find this rather simple approach to the issue at hand to be persuasive. Conrad responds that the last page of the will merely served to self-prove the will, but did not witness it. But subsection (d) of the statute allows an attestation clause to serve also as a self-proving clause. The statute expressly provides that a will is self-proving if its attestation clause indicates the facts necessary to prove the will:

(d) This subsection applies to all wills, regardless of the date a will is executed. A will is presumed to be self-proved if the will includes an attestation clause signed by the witnesses that indicates that:

(1) The testator signified that the instrument is the testator's will;

(2) In the presence of at least two (2) witnesses, the testator signed the instrument or acknowledged the

testator's signature already made or directed another to sign for the testator in the testator's presence;

(3) The testator executed the instrument freely and voluntarily for the purposes expressed in it;

(4) In the presence of all other witnesses, is executing the instrument as a witness;

(5) The testator was of sound mind when the will was executed; and

(6) The testator is, to the best of the knowledge of each of the witnesses, either:

(A) At least eighteen (18) years of age; or

(B) A member of the armed forces or the merchant marine of the United States or its allies.

Conrad is correct in asserting that the specific language of page five is designed to be a self-proving clause. Indeed, it verbatim matches some forms suggested for this purpose by respected practice groups. *See* John A. Gardner, *Boilerplate Will Provisions*, Indiana Continuing Legal Education Forum Estate Planning Workshop 20–23 (1993). But the statute says a will may be self-proving "if the will includes an attestation clause ... that indicates [self-proving requirements]." I.C. 29–1–5–3(a). This plainly contemplates that the same clause may both attest and self-prove.

■ Moreover, it is well settled that the statute does not require any particular language to constitute an attestation as long as it is clear that attestation is what is intended by the witnesses. *Barricklow v. Stewart*, 163 Ind. 438, 440, 72 N.E. 128, 129 (1904); *Modlin v. Riggle*, 399 N.E.2d 767, 770 (Ind.Ct.App.1980) ("A full and detailed attestation clause is not necessary under Indiana statutes or cases.") (citations omitted). Nor does language in the document between the operative provisions of the will and the signatures of the attesting witnesses necessarily invalidate the attestation. *Potts v. Felton*, 70 Ind. 166, 172–73 (1880) (finding a will properly executed even though "a memorandum of three lines, signed by the testator's wife, intervened between Webster C. Potts' signature to his will and the signature of the witness, James H. Potts"). Therefore, the mere presence of the self-proving language between the will and the signatures does not compel the conclusion that the witnesses were not attesting to the will. Even some language inconsistent with provable facts may precede the attesting witnesses' signatures but not necessarily invalidate attestation. For example, a will was held to be properly executed even though the attestation clause stated that the testator had signed both pages when he had not signed the first page. *In re Estate of Parlock*, 486 N.E.2d 567, 570 (Ind.Ct.App.1985). The inconsistency did not invalidate the will because it did not relate to a statutorily required element of execution. *Id.* The court pointed out that all of the statutory requirements had been met and "[n]o evidentiary basis exists which might indicate that the will was unduly executed." *Id.* The same is true here. Seeking to self-prove with the same signature does not negate an intent to attest as witness.

We recognize that language in the document may negate an intent that a signature constitute an attestation by a witness. To give a trivial example to illustrate the point, if a signature appears under the following: "I acknowledge receipt of a copy of the foregoing will," it presumably would not serve as an attesting witness. But that is not the case here. The language of the fifth page plainly evidences an intent to self-prove, but it also refers to the signatories as "witnesses" and recites

the essential facts for attestation, i.e., that each witness signed in the presence of the testator and each other.

Conrad points out that the clause preceding the witnesses' signatures seems to assert that the witnesses had already signed the will when they signed page five. In fact, the signatures appear only on page five. This discrepancy does not invalidate their signatures as witnesses. The witnesses were not required to attest to the will before this clause, and minor inconsistencies are not sufficient to defeat the plain intent of the witnesses. *See Potts*, 70 Ind. at 172; *Estate of Parlock*, 486 N.E.2d at 570. The witnesses met all of the statutory requirements by signing the will as "witnesses" in the presence of Dellinger and of each other. Therefore, the witnesses properly attested to the will and the trial court's rejection of Ms. Conrad's challenge to the will was correct.

Finally we note that the General Assembly recently enacted legislation amending the statute at issue to explain more clearly the methods for properly witnessing wills. 2003 Ind. Legis. Serv. 4 (West). To address the issue of the effect of language inserted between the terms of a will and witness signatures, the amendment revises subsection (c) to make it clear that attestation or self-proving language preceding the witnesses' signatures does not invalidate the will. The subsection now reads in relevant part, "[a] will that is executed substantially in compliance with subsection (b) will not be rendered invalid by the existence of (1) an attestation or self-proving clause or other language; or (2) additional signatures; not required by subsection (b)." The legislation also adds section 3.1 to the statute, which says: "[i]f the testator and witnesses sign a self-proving clause that meets the requirements of subsection (c) or (d) at the time the will is executed, no other signatures of the testa-

tor and witnesses are required for the will to be validly executed and self-proved." This language addresses exactly the situation at issue here and clearly provides that one set of signatures following a self-proving clause can serve both to attest and self-prove a will.

If the statute as it currently reads had been in effect when Dellinger's will was executed, there would be no question that the will was properly witnessed. We think that the 2003 amendments were simply the most recent in a long line of changes to the statute that were meant to eliminate the need for live witness testimony to prove the validity of a will signed by the testator and witnesses in the presence of each other. In 1978, the legislature first provided for wills to be self-proving and require no live testimony to prove execution. 1978 Ind. Acts 132, Sec. 2. In 1983, the legislature amended the statute to make clear that wills could be executed, attested, and made self-proving with one set of signatures. 1983 Ind. Acts 273, Sec. 1. In the years that followed, the legislature twice attempted to clarify the requirements for attesting and self-proving a will. 1985 Ind. Acts 273, Sec. 1; 1989 Ind. Acts 262, Sec. 1. All of these amendments were intended not to make substantive changes, but to dispel any remaining confusion over the intended meaning of the statute. They do not imply that wills executed in the manner used in this case were invalid. Rather, they evidence a consistent legislative intent to simplify this process and eliminate unnecessary procedures.

## II. Self–Proving

■ Conrad argues that the will is not self-proving. In the order originally admitting the will to probate, the trial court concluded that the will is self-proving. In the hearing held on Conrad's will contest, the trial court, after listening to testimony of the witnesses, again concluded that the

will is valid. Because that conclusion was in a general judgment, we affirm it if the evidence supports the facts necessary to support the conclusion of law. As a result, whether Dellinger's will was self-proving is a moot issue because it was independently proved at trial. However, because amici curiae suggest the importance of resolving this issue, we address it.

We hold that Dellinger's will was properly made self-proving under subsection (d) of the statute, quoted above. A will is self-proving under this section because, by signing this clause and claiming that all of the above facts are true, the testator and witnesses assert that the circumstances surrounding the execution of the will were proper. This allows the will to be admitted to probate without the testimony of any of the subscribing witnesses. By signing the fifth page bearing the quoted language, the witnesses asserted all of the facts required by statute. Accordingly, the will is self-proving.

Conrad argues that inaccuracies in this clause invalidate it as a self-proving clause. She first argues that the statement that the witnesses signed the will is erroneous. This proceeds from the assumption that the signatures to page five were not attesting witnesses and/or the fifth page is not part of the will. We disagree for the same reason we concluded that the witnesses' attestation was valid: the witnesses did sign the self-proving page, which was a part of the will.

Conrad also argues that the statement in the self-proving clause that the testator signed the will is incorrect because Mr. Dellinger did not actually sign the will, but had his attorney do so. We think a recitation that the testator signed is, under these circumstances, fairly taken as embodying a signature by another at the direction and in the presence of the testator as subsection (a)(1)(C) permits. To the

extent it is an inconsistency, like that in the attestation clause at issue in *Estate of Parlock*, this inconsistency does not invalidate the self-proving clause because it does not involve a statutory element of self-proof. The statute requires only that the clause "indicate" certain facts for a will to be self-proving and does not require any specific language to indicate these facts. The clause properly met the statutory requirements by asserting all of the facts required by statute to show that the execution of the will was proper. Therefore, the clause is effective and the will is self-proving.

### Conclusion

The will was validly attested and made self-proving pursuant to Indiana Code section 29-1-5-3(a). The judgment of the trial court rejecting Conrad's Motion to Contest is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.