Stan G. **WYRICK**, as Personal Representative of the Estate of Robert W. Gentry, Sr., Deceased, and Stan G. Wyrick, as Trustee of the Robert W. Gentry, Sr., Revocable Trust, and Stan G. Wyrick, as Trustee of the Robert W. Gentry, Sr., First Revocable Trust, and Sharon K. Gentry, Appellants/Cross–Appellees,

v.

Roy **GENTRY**, Robert W. Gentry, Jr., Marsha Martinez, Jeff Gentry, James Gentry, Christina Piotrowski, Mary Cantrell, Melissa Rich, Brandi Coman and Stephanie Vaugh, Appellees/Cross–Appellants.

No. 82A01–0303–CV–102.

Court of Appeals of Indiana.

Sept. 26, 2003.

Steven K. Hahn, T. Scott Webb, Ziemer
Stayman Weitzel & Shoulders, Evansville,
IN, Attorneys for Appellants.

Andrew S. Ward, Frederick R. Folz,
Keck & Folz, Evansville, IN, Attorneys for
Appellees.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants/Cross–Appellees, Stan G. Wyrick (Wyrick) and Sharon K. Gentry (Sharon), appeal the trial court's grant of summary judgment in favor of Appellees–Plaintiffs/Cross–Appellants, Roy Gentry, Robert W. Gentry, Jr., Marsha Martinez, Jeff Gentry, James Gentry, Christina Piotrowski, Mary Cantrell, Melissa Rich, Brandi Coman and Stephanie Vaugh (collectively "the Gentry Children").

The Gentry Children cross-appeal whether Wyrick and Sharon timely filed their Motion to Correct Error with regard to the trial court's grant of summary judgment.

We reverse and remand.

### ISSUES

Wyrick and Sharon raise one issue on appeal, which we restate as follows: whether the trial court erred in granting summary judgment in favor of the Gentry Children. On cross-appeal, the Gentry Children raise one issue, which we restate as follows: whether Wyrick and Sharon timely filed their Motion to Correct Error.

### FACTS AND PROCEDURAL HISTORY

Robert Warren Gentry, Sr. (Robert), died on November 15, 1999. On December 13, 1999, Robert's last will (Will), dated September 10, 1999, was offered and admitted to probate in the Vanderburgh County Superior Court. On May 10, 2000, the Gentry Children timely filed a com-

plaint to contest Robert's Will on the ground that the Will and its probate were invalid.

On September 6, 2002, the Gentry Children filed their Motion for Summary Judgment and supporting memorandum. On October 8, 2002, Wyrick and Sharon filed their brief in opposition to the Gentry Children's Motion for Summary Judgment. On October 29, 2002, the trial court conducted a hearing on the Gentry Children's Motion for Summary Judgment.

On November 20, 2002, the trial court clerk made the following entry into the chronological case summary (CCS):

> 11/20/02   Court, having had [the Gentry Children's] Motion for Summary Judgment under advisement, now grants [the Gentry Children's] Motion for Summary Judgment on undo execution of Will. Pre-trial date of 01/24/03 and trial date of 02/24/03 are hereby vacated. (ETBF–WARD) (MML/DJN) (CC: COUNSEL OF RECORD)

(Appellees/Cross–Appellants' App. p. 4). On November 21, 2002, the trial court clerk made the following CCS entry:

> 11/21/02   Entry of 11/20/02 filed and approved. (MML/DJN) (CC: COUNSEL OF RECORD)

(Appellees/Cross–Appellants' App. p. 4). On November 22, 2002, the trial court clerk made the following CCS entry:

> 11/22/02   Order filed 11–21–02 for 11–21–02 received and entered into order book this date.

(Appellees/Cross–Appellants' App. p. 3).

On December 23, 2002, Wyrick and Sharon filed their Motion to Correct Error. On February 5, 2003, the trial court conducted a hearing on Wyrick and Shar-

on's Motion to Correct Error and subsequently denied said motion.

Wyrick and Sharon now appeal. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

■ Because the Gentry Children raise a threshold procedural issue on cross-appeal, we must address their issue first. The Gentry Children contend that Wyrick and Sharon failed to file timely their Motion to Correct Error pursuant to Indiana Trial Rule 59(C) with regard to the trial court's grant of summary judgment in favor of the Gentry Children. Further, the Gentry Children argue that the untimely filing of the Motion to Correct Error results in the untimely filing of Wyrick and Sharon's Notice of Appeal. As a result, the Gentry Children contend that Wyrick and Sharon's appeal must be dismissed. We disagree.

Trial Rule 59(C) provides in pertinent part: "The motion to correct error, if any, shall be filed not later than thirty (30) days after the entry of a final judgment or an appealable final order." Here, Wyrick and Sharon filed their Motion to Correct Error on Monday, December 23, 2002. Wyrick and Sharon maintain that the trial court's order granting the Motion for Summary Judgment was dated and file-stamped "November 21, 2002," but that the trial court clerk did not enter that judgment into the Record of Judgment and Orders (RJO) until November 22, 2002. Therefore, their Motion to Correct Error was due to be filed thirty days later on December 22, 2002. However, December 22, 2002, was a Sunday. Thus, as Monday, December 23, 2002, was the next business day in which to file a motion with the trial court, their motion was timely filed on that day.[1]

---

1.   *See* T.R. 6(A) specifies that, in computing a period of time prescribed by the trial rules,

when the last day of the time period falls on a Saturday, Sunday, or legal holiday, the time

On the contrary, the Gentry Children argue that the thirty-day time period actually started when the trial court clerk made the November 20, 2002 CCS entry wherein the trial court granted their Motion for Summary Judgment and notice of the entry was mailed to "Counsel of Record." (Appellees/Cross–Appellants' App. p. 4). As a result, the Gentry Children contend that the deadline for filing a motion to correct error was Friday, December 20, 2002. Moreover, as the untimely filing of the Motion to Correct Error renders the trial court's ruling thereon a nullity, the Gentry Children maintain that Wyrick and Sharon have also failed to file timely their Notice of Appeal within thirty days of the trial court's grant of the Motion for Summary Judgment, as required by Ind. Appellate Rule 9(A)(1).[2]

In *In re Estate of Hester*, 780 N.E.2d 848, 849 (Ind.Ct.App.2002), we addressed the issue of what action constitutes entry of final judgment for purposes of filing a Notice of Appeal. In *Hester*, the trial court signed the final order on August 28, 2002; it was file-stamped as being "filed in open court" on August 28, 2002, and the CCS showed that the order was entered into the RJO on August 28, 2002. However, the trial court clerk received the case file and order on September 3, 2002. As a result, she entered the order into the computer on September 3, 2002, but reflected in the computer entry that the order was signed on August 28, 2002. The appellants in *Hester* argued that the order was en-

tered on September 3, 2002; therefore, the Notice of Appeal they filed on October 3, 2002, was timely filed pursuant to T.R. 58(A).

In *Hester*, this court noted that T.R. 58(A) provides:

> [U]pon a decision of the court, the court shall promptly prepare and sign the judgment, and the clerk shall thereupon enter the judgment in the Record of Judgments and Orders and note the entry of the judgment in the Chronological Case Summary and Judgment Docket.

In addition, App. R. 9(A)(1) requires a party wishing to appeal a trial court's determination to file a Notice of Appeal with the trial court clerk within thirty days after the entry of a final judgment. Accordingly, in *Hester*, we concluded, "even though the probate clerk made a computer record of the judgment on September 3, 2002, judgment was *entered* [into the RJO] on August 28, 2002." *In re Estate of Hester*, 780 N.E.2d at 849 (emphasis added). Therefore, the Notice of Appeal filed by the appellants in *Hester* on October 3, 2002, was not timely filed and their appeal was dismissed with prejudice.

Likewise, in the instant case, the judgment was not signed and filed until November 21, 2002. However, the trial court clerk did not enter the judgment into the RJO until November 22, 2002. Therefore, the entry of final judgment, for purposes of filing a Motion to Correct Error was not made until November 22, 2002. *See In re Estate of Hester*, 780 N.E.2d at 849. As a

---

period runs until the end of the next normal business day, which in this case, according to Wyrick and Sharon, was Monday, December 23, 2002.

**2.** App. R. 9(A)(1) provides in relevant part, "A party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment. However, if any party files a *timely* motion to correct error, a Notice of Appeal must be filed

within thirty (30) days after the court's ruling on such motion" (emphasis added). In other words, if a party files an *untimely* motion to correct error, the Notice of Appeal must be filed within thirty days of the Final Judgment in order to be considered timely. Moreover, "unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited." *See* App. R. 9(A)(5).

result, Wyrick and Sharon were required to file their Motion to Correct Error by December 22, 2002. *See* T.R. 59(C). However, December 22, 2002, fell on a Sunday. Consequently, the next normal business day in which to file a motion with the trial court was Monday, December 23, 2002. *See* T.R. 6(A). Thus, Wyrick and Sharon timely filed their Motion to Correct Error on Monday, December 23, 2002.

■ Returning now to the issue on direct appeal, Wyrick and Sharon contend that the trial court erred in granting the Gentry Children's Motion for Summary Judgment. Specifically, they argue that the trial court improperly relied on *Estate of Dellinger v. 1st Source Bank*, 771 N.E.2d 1271 (Ind.Ct.App.2002), which was later vacated on rehearing, in making its determination. In addition, Wyrick and Sharon assert that, as a result of the *Dellinger* decision, the Indiana General Assembly passed legislation effective July 1, 2003, intended to retroactively clarify the probate law at issue in *Dellinger*. They argue that this legislation should be applied retroactively to remedy the alleged defects in Robert's Will.

In reviewing the propriety of a trial court's ruling of summary judgment, we apply the same standard as the trial court. *Schoknecht v. Hasemeier*, 735 N.E.2d 299, 301 (Ind.Ct.App.2000). We do not reweigh the evidence designated by the parties. *Id.* Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if the pleadings and evidence show: 1) the absence of a genuine issue of material fact, and 2) the moving party is entitled to judgment as a matter of law. *Id.* at 301–02. On appeal, summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Figg v. Bryan Rental, Inc.*,

646 N.E.2d 69, 71 (Ind.Ct.App.1995), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity." *Id.*

Wyrick and Sharon assert that the trial court relied on *Dellinger* in granting summary judgment in favor of the Gentry Children. The *Dellinger* court construed I.C. § 29–1–5–3 to require two sets of signatures from the testator and two witnesses for a will to be valid: one set for the attestation clause and one set for the self-proving clause. *Dellinger*, 771 N.E.2d at 1275. The *Dellinger* court concluded that a will having only one set of signatures after the self-proving clause is not a validly attested will. *Id.* Here, the trial court made the following findings of fact and conclusions of law in its order:

1. The September 10, 1999 document previously admitted to probate as the Last Will and Testament of Robert W. Gentry, Sr., was not attested with two (2) witnesses signatures as required by I.C. 29–1–5–3(a).

2. The September 10, 1999 document employs the language of I.C. 29–1–5–3(b) which requires two (2) sets of signatures testator and witnesses signatures.

3. The September 10, 1999 document does not employ the language of I.C. 29–1–5–3(d) and was not attested as required [sic] that subsection.

4. The document previously submitted for probate with the Vanderburgh Superior Court as the Last Will and Testament of Robert W. Gentry, Sr., is invalid as a result of its undue execution.

(Appellants' App. p. 17).

In addition, Wyrick and Sharon assert that the Indiana General Assembly responded to the *Dellinger* decision by passing legislation effective July 1, 2003, clarifying the legislative intent of I.C. § 29–1–5–3. Wyrick and Sharon further argue

that the General Assembly intended the new legislation to be applied retroactively, which would remedy the alleged defects in Robert's Will. Consequently, we must determine whether amendments to I.C. § 29–1–5–3 and the newly created I.C. § 29–1–5–3.1, effective July 1, 2003, may be applied retroactively to Robert's Will as a remedy to alleged defects in the Will.

As a general rule, statutes will not be applied retroactively absent strong and compelling reasons. *Bourbon Mini-Mart, Inc. v. Gast Fuel and Services, Inc.*, 783 N.E.2d 253, 260 (Ind.2003). However, an exception exists for remedial statutes, *i.e.* statutes intended to cure a defect or mischief that existed in a prior statute. *Id.* Ultimately, whether a statute applies retroactively depends upon the intent of the General Assembly. That is, when considering a remedial statute, the court must construe it to carry out the legislative purpose of the statute unless doing so violates a vested right or constitutional guaranty. *Id.*

Here, effective July 1, 2003, I.C. § 29–1–5–3 was amended to read as follows:

Sec. 3(a) *This section applies to a will executed before, on, or after July 1, 2003.* A will, other than a nuncupative will, must be executed by the signature of the testator and of at least two (2) witnesses on:

(1) a will under subsection (b);

(2) a self-proving clause under section 3.1(c) of this chapter; *or*

(3) a self-proving clause under section 3.1(d) of this chapter.

(b) A will may be attested as follows:

(1) The testator, in the presence of two (2) or more attesting witnesses, shall signify to the witnesses that the instrument is the testator's will and either:

(A) sign the will;

(B) acknowledge the testator's signature already made; or

(C) at the testator's direction and in the testator's presence have someone else sign the testator's name.

(2) The attesting witnesses must sign in the presence of the testator and each other.

*An attestation or self-proving clause is not required under this subsection for a valid will.*

(c) A will that is executed substantially in compliance with subsection (b) will not be rendered invalid by the existence of:

(1) an attestation or self-proving clause or other language; or

(2) additional signatures; not required by subsection (b).

(d) A will executed in accordance with subsection (b) is self-proved if the witness signatures follow an attestation or self-proving clause or other declaration indicating in substance the facts set forth in section 3.1(c) or 3.1(d) of this chapter.

(e) *This section shall be construed in favor of effectuating the testator's intent to make a valid will.*

(Emphasis added).

Moreover, the General Assembly created I.C. § 29–1–5–3.1 to clarify the contents of a self-proving clause. Indiana Code § 29–1–5–3.1 provides in pertinent part as follows:

(a) *This section applies to a will executed before, on, or after July 1, 2003.* When a will is executed, the will may be:

(1) attested; and

(2) made self-proving;

by incorporating into or attaching to the will a self-proving clause that meets the requirements of subsection (c) or (d). *If the testator and witnesses sign a self-*

*proving clause that meets the require-ments of subsection (c) or (d) at the time the will is executed, no other signatures of the testator and witnesses are re-quired for the will to be validly executed and self-proved.*

. . . .

(c) A self-proving clause must contain the acknowledgment of the will by the testator and the statements of the wit-nesses, each made under the laws of Indiana and evidenced by the signatures of the testator and witnesses (which may be made under the penalties for perjury) attached or annexed to the will in form and content *substantially* as follows:

We, the undersigned testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument declare:

(1) that the testator executed the in-strument as the testator's will;

(2) that, in the presence of both wit-nesses, the testator signed or acknowl-edged the signature already made or directed another to sign for the testator in the testator's presence;

(3) that the testator executed the will as a free and voluntary act for the pur-poses expressed in it;

(4) that each of the witnesses, in the presence of the testator and of each other, signed the will as a witness;

(5) that the testator was of sound mind when the will was executed; and

(6) that to the best knowledge of each of the witnesses the testator was, at the time the will was executed, at least eigh-teen (18) years of age or was a member of the armed forces or of the merchant marine of the United States or its allies.

———————
Testator

———————
Date

———————
Witness

———————
Witness

(d) A will is attested and self-proved if the will includes or has attached a clause signed by the testator and the witnesses that indicates in substance that:

(1) the testator signified that the in-strument is the testator's will;

(2) in the presence of at least two (2) witnesses, the testator signed the instru-ment or acknowledged the testator's sig-nature already made or directed another to sign for the testator in the testator's presence;

(3) the testator executed the instru-ment freely and voluntarily for the pur-poses expressed in it;

(4) each of the witnesses, in the testa-tor's presence and in the presence of all other witnesses, is executing the instru-ment as a witness;

(5) the testator was of sound mind when the will was executed; and

(6) the testator is, to the best of the knowledge of each of the witnesses, ei-ther:

(A) at least eighteen (18) years of age; or

(B) a member of the armed forces or the merchant marine of the United States or its allies.

(e) *This section shall be construed in favor of effectuating the testator's intent to make a valid will.*

(Emphasis added).

■ In construing the legislative intent of the amendments to I.C. § 29–1–5–3 and the newly created § 29–1–5–3.1 (section 3.1), we note the following: (1) the General Assembly used language that makes the statutes applicable to a will executed be-

fore, on, or after July 1, 2003,[3] (2) the General Assembly clarified that a valid will requires neither an attestation clause or a self-proving clause,[4] (3) the General Assembly added I.C. § 29-1-5-3(e) to emphasize the importance of the testator's intent over the format suggested in the statute, (4) the General Assembly separated the statutory explanation of the self-proving clause by adding section 3.1, which also applies to wills executed before, on, or after July 1, 2003,[5] (5) the General Assembly clarified that a valid will does not require more than one set of signatures for the testator and two witnesses, (6) in addition, the General Assembly specifically added the provision: "If the testator and witnesses sign a self-proving clause that meets the requirements of subsection (c) or (d) at the time the will is executed, no other signatures of the testator and witnesses are required for the will to be validly executed and self-proved," [6] and (7) as with the amendment to section 3, the General Assembly added subsection (e) to emphasize the importance of the testator's intent over the suggested format in section 3.1 for the self-proving clause.[7]

Moreover, the General Assembly passed legislation that provided substantially the same language as the amendments to I.C. § 29-1-5-3 and the addition of section 3.1 except the provisions were effective immediately upon passage and until July 1, 2003, at which time the amendments and new section became effective. *See* House Enrolled Act No. 1368, 113th Gen. Assem., 1st Reg. Sess. (Ind.2003). Considering the language set forth above as well as the emergency legislation effective immediately upon passage, we cannot construe the amendments in any manner other than as the emphatic remedial intent of the General Assembly to cure defective language in the prior statute.

Further, the instant case is one of a limited number of wills that could be probated between the time of the first *Dellinger* opinion [8] and July 1, 2003, when the amendments to I.C. § 29-1-5-3 and section 3.1 became effective. Because Robert's estate has not yet been settled, we find that the amendments to I.C. § 29-1-5-3 and the newly added section 3.1 apply retroactively to Robert's Will. In applying the new statute, we hold that the self-proving clause in Robert's Will substantially complies with the suggested format in section 3.1(c). Therefore, Robert's Will was validly executed and self-proved per I.C. § 29-1-5-3.1(a). As a result, the trial court's grant of summary judgment must be reversed.

### CONCLUSION

Based upon the foregoing, we find that amended I.C. § 29-1-5-3 and the newly

---

**3.** July 1, 2003, was the effective date of the amendment. *See* I.C. § 29-1-5-3(a).

**4.** *See* I.C. § 29-1-5-3(b).

**5.** *See* I.C. § 29-1-5-3.1(a).

**6.** *See id.*

**7.** *See id.* (e).

**8.** The opinion to which this case refers is the first of three opinions handed down by this court. The first *Dellinger* opinion of July 30, 2002, was vacated on rehearing by *Estate of*

*Dellinger v. 1st Source Bank*, 781 N.E.2d 1186 (Ind.Ct.App.2003), which was handed down on January 23, 2003. The second *Dellinger* was subsequently vacated on rehearing and replaced with *Estate of Dellinger v. 1st Source Bank*, 787 N.E.2d 986 (Ind.Ct.App.2003), which was handed down on May 8, 2003. The Indiana supreme court granted transfer on May 20, 2003. In its opinion of August 26, 2003, our supreme court held that "a single signature of each of two witnesses in the presence of each other and of the testator may serve to witness a will and also to self-prove it." *Dellinger v. 1st Source Bank*, 793 N.E.2d 1041, 1042 (Ind.2003).

created I.C. § 29–1–5–3.1 apply retroactively to Robert's Will. Consequently, Robert's Will was validly executed. For this reason, we reverse the trial court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

SHARPNACK and BARNES, JJ., concur.