George E. GOODWINE, Beneficiary
of the Earl Goodwine Trust,
Appellant–Plaintiff,

v.

J. William GOODWINE, Trustee and
Beneficiary of the Earl Goodwine
Trust, and Edward Kristoff, Trustee
of the Earl Goodwine Trust, Appel-
lees–Defendants.

No. 86A03–0403–CV–141.

Court of Appeals of Indiana.

Nov. 5, 2004.

George E. Goodwine, Hoopeston, IL, Appellant pro se.

L. Alan Whaley, Gordon D. Wishard, Kevin M. Alerding, Ice Miller, Indianapolis, IN, John A. Larson, Larson Law Office, Williamsport, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff George E. Goodwine ("Goodwine") appeals the trial court's judgment against him and in the favor of appellees-defendants J. William Goodwine and Edward Kristoff (collectively, the "Trustees"). Specifically, Goodwine raises approximately fourteen issues, which we distill into two contentions.[1] Goodwine argues that the trial court erred in determining that the Trustees did not breach any common law or statutory duties by: (1) planting a percentage of the farmland owned by the Trust with a clover/oat rotation instead of a corn/soybean rotation; and (2) planning to build a new tool shed for the use of a tenant of the farmland. Finding that the trial court properly entered judgment in favor of the Trustees, we affirm.

### FACTS

The facts most favorable to the judgment are that the Trustees administer a trust created—by two Deed of Trust documents and by Goodwine's grandfather's last will and testament—in the 1960s by the Trustees' and Goodwine's grandparents. The principal asset of the Trust is approximately 4,000 acres of farmland (the "Goodwine Farms") in Warren County. In November 1997, Goodwine became a present income beneficiary of a one-eighth share of the Trust. There are currently five other present income beneficiaries, all of whom are members of the Goodwine family. Among the other present income beneficiaries is Goodwine's brother, Trustee J. William Goodwine. The other Trustee, Edward Kristoff, is the husband of Goodwine's cousin, another present income beneficiary.

The Deed of Trust outlines the Trustees' responsibilities:

[s]aid trustees and their successors shall have and are hereby granted the possession of [the Goodwine Farms] with full power and authority to manage and operate the same, to collect the rent and profits therefrom and to distribute the net income thereof to the beneficiaries entitled thereto as hereinafter provided after payment of necessary costs and expenses of the ownership and operation of said real estate which shall include payment of the following enumerated expenses but not be limited to the same, to-wit: Property taxes, premiums on insurance policies for the reasonable insurable value of improvements, assessments, cost of repair of existing improvements including but not limited to structures, fences, drains and ditches, cost of maintenance of the fertility of soil by proper rotation and sowing of

---

1. Goodwine's brief is confusing, disorganized, and does not comply with the Rules of Appellate Procedure. We acknowledge that he is appearing *pro se* but also note that he is a practicing attorney, licensed in three states, with his own Illinois law firm. Appellant's App. p. 43. We caution him to pay closer attention to the Rules of Appellate Procedure in the future.

legumes, spreading of lime and rock phosphate, if and when needed, and cost of replacement of existing or similar structures, fences, drains and ditches which during the term of this trust shall depreciate and deteriorate and become unrepairable [sic] where such replacements are necessary for the proper operation of said real estate and will contribute to the productivity of said real estate and the maintenance of the income productivity thereof as farm land as good farming practices shall from time to time require.

Appellant's App. p. 11.

The Deed of Trust further elaborates upon the freedom given to the Trustees:

[t]he enumeration herein of the responsibilities of said trustees shall not be construed as in strict limitation thereof in so far as the accomplishment of the general purposes of this trust are concerned and it is expressly declared that any Court having jurisdiction of the trust herein created shall have authority to authorize any and all acts during the period of this trust by said trustees which will in the opinion of such Court be of benefit to the income beneficiaries and to the eventual remaindermen of title to the corpus of this trust.

Appellant's App. p. 17.

Beginning in 2002, what appears to have been a relatively cordial and good-natured relationship between Goodwine and the Trustees deteriorated to the point that Goodwine threatened—and took—legal action. His dissatisfaction stems from two primary quarrels with the ways in which the Trustees have managed the trust.

Goodwine disagrees with the Trustees' decision to include clover and oats as a part of the Goodwine Farms' crop rotation. The Trustees have dedicated a certain percentage of the Goodwine Farms acreage to clover and oats on a 2–year rotation: in the first season, oats are sown in with the clover but not always harvested; in the second season, the clover stands by itself. The clover is not sold for a profit; rather, it is used as a "green manure crop" in the second year of a rotation and plowed back into the ground, a practice that is beneficial because of a return of organic matter and nitrogen to the soil.

According to the Trustees' expert, while clover is not a cash crop and the oats are not always harvested, this crop rotation is beneficial to the soil and will help to create increased corn yields in the future because of increased soil productivity. In contrast, Goodwine's expert opined at trial that Goodwine Farms would not receive any financial benefit from planting a clover rotation, in fact concluding that its overall yield and profits—currently and in the future—would be maximized by maintaining a corn and soybean rotation on all of the farm acreage.

Goodwine also disagrees with the Trustees' decision to construct a tool shed on Trust real estate at a cost of $65,000. The Trust leases its acreage to a number of farmers, including Jerry Silver, who farm the land. The existing tool shed on the real estate farmed by Silver is not large enough to accommodate modern machinery. Silver currently performs his maintenance, repair, and preparation work outside in a gravel lot, which generally restricts that work to days with good weather. Moreover, the existing tool shed is located approximately two miles from Silver's residence, which creates a personal safety concern for him and a security concern for his property. The Trustees believe that the proposed tool shed will enable Silver to perform his maintenance, repair, and preparation work without regard to the weather, which will in turn enable him to perform other work, such as planting and harvesting, on days with

good weather. They further believe that the proposed tool shed will make Silver a more productive farmer and improve the productivity of the farming operation.

On October 8, 2003, Goodwine filed a complaint against the Trustees, alleging that the Trustees had violated their duties to the Trust beneficiaries by engaging in imprudent farm practices and failing to maximize revenue for the current income beneficiaries. He also filed a motion for preliminary injunction, seeking to prevent the Trustees from constructing the above-described tool shed. On November 25 and December 18, 2003, the trial court conducted a bench trial. On February 26, 2004, the trial court entered judgment for the Trustees, accompanied by extensive findings of fact and conclusions of law. Goodwine now appeals.

## DISCUSSION AND DECISION [2]

### I. Standard of Review

■■■ As we consider Goodwine's argument that the trial court's judgment should be reversed, we note that because the trial court entered findings of fact and conclusions of law, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Freese v. Burns*, 771 N.E.2d 697, 700–01 (Ind.Ct.App.2002), *trans. denied*. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Challengers must establish that the trial court's findings are clearly erroneous. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* We do not defer to conclusions of law, however, and evaluate them de novo. *Id.*

■■■ When we evaluate the actions of a trustee and the trustee has been vested with discretion, we will not disturb the trustee's determinations unless there has been an abuse of that discretion. *Robison v. Elston Bank & Trust Co.*, 113 Ind.App. 633, 48 N.E.2d 181, 187 (1943). Thus, where a trustee determines that it is necessary and proper to use trust assets for a certain purpose, we will not interfere unless the trustee acted in bad faith or in some way abused or unreasonably exercised his discretion. *Id.*

With respect to a trustee's duties, we note that there are several relevant principles that guide trustees in the administration of a trust unless the language of the trust instrument provides otherwise. In particular, the trustee must administer the trust according to its terms. I.C. § 30–4–3–6(b). Moreover, the trustee must preserve the trust property and make it productive for both income and remainder beneficiaries. *Id.* Finally, the trustee must administer the trust in a manner that

**2.** We direct Goodwine and counsel for the Trustees to Indiana Appellate Rule 22, which provides that citations to decisions in briefs are to follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). When referring to specific material within a source, a citation should include both the page on which the source begins and the page on which the specific material appears. Uniform System of Citation Rule 3.3 (17th ed.2000). As we have often noted, we will not, on review, search through the authorities cited by a party to try to find legal support for its position. *Haddock v. State*, 800 N.E.2d 242, 245 n. 5 (Ind. Ct.App.2003). We note that the Trustees' brief is devoid of pinpoint citations and Goodwine's briefs, while containing some, have omitted the majority of pinpoint citations.

is consistent with the Prudent Investor Act. *Id.; see also* I.C. § 30–4–3.5 *et seq.*

## II. Trust Instrument

As we consider Goodwine's argument that the Trustees violated their duties and responsibilities pursuant to the Deed of Trust, we must first determine what those duties and responsibilities are by construing the Deed of Trust. If the Trustees' actions are prohibited by the instrument, our inquiry ends here, and if they are permitted, we must then go on to consider whether their actions breached any other duties.

■■■ In construing a trust instrument, the primary objective is to ascertain and carry out the settlor's intent. *In re Hanson Revocable Trust,* 779 N.E.2d 1218, 1221 (Ind.Ct.App.2002), *trans. denied.* If the settlor's intent is clear from the plain language of the instrument and not against public policy, we must give effect to that intent. *Id.* Indeed, "[i]f the rules of law and the terms of the trust conflict, the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." Ind.Code § 30–4–1–3.

■■■ We examine the trust document as a whole to determine the plain and unambiguous purpose of the settlor as that intent appears within the four corners of the instrument. *Id.* To determine the settlor's intent, courts look first to the language used in the trust document. *Stowers v. Norwest Bank Indiana, N.A.,* 624 N.E.2d 485, 489 (Ind.Ct.App.1993). If the terms of the trust instrument are not ambiguous, a court may examine only the document itself to determine the settlor's intent. *Id.*

### A. Settlor's Purpose

The Trust instrument in this case provides not only for present income benefi-ciaries but also for future remainder beneficiaries. Appellant's App. p. 12–16. The Trustees are to distribute the farm property to the remainder beneficiaries upon the termination of the Trust, and the instrument empowers a court to authorize acts that are "of benefit to the income beneficiaries and to the eventual remaindermen." *Id.* p. 14, 17. Therefore, the Deed of Trust unambiguously evinces the settlor's dual purposes of maintaining current productivity of the farm property—thereby providing income to present beneficiaries—and maintaining that productivity into the future—thereby preserving the land for the remainder beneficiaries.

### B. Clover Rotation

■■■ Goodwine contends that the Trustees overstepped their authority under the Deed of Trust and breached their duties by practicing a clover/oat rotation on a portion of the farmland. Specifically, he argues that the Trustees are limited to costs and expenses that are essential to maximizing present income.

The Trust instrument requires the Trustees to pay all "necessary costs and expenses of the ownership and operation" of the farmland, enumerating a non-inclusive list of qualifying expenses. Appellant's App. p. 11. Included as a proper expense is the "cost of maintenance of the fertility of soil by proper rotation and sowing of legumes." *Id.* Both parties agree that clover is a forage legume. Appellant's Br. p. 8; Appellees' Br. p. 25.

Admittedly, there may be other ways, a corn/soybean rotation among them, to farm the land and comply with the Trust instrument. But the Trustees have chosen an acceptable method that complies with the document and its purpose. And while the clover/oats rotation may result in less income for present income beneficiaries, it appropriately safeguards the longevity of the soil and the remainder beneficiaries'

interests in accordance with the settlor's intent. Tr. p. 289–99. The Trust instrument clearly and unambiguously permits the Trustees to maintain soil fertility with a clover rotation on the farmland, which serves the settlor's purpose of maintaining the productivity of the farmland for the remainder beneficiaries.

With respect to Goodwine's argument that the Trustees breached their duties by employing a clover/oats rotation, it is apparent that the trial court properly found that the Trustees acted permissibly. The trial court heard evidence that a clover/oats rotation is beneficial to the soil and will help to ensure the productivity of the farmland for years to come. Tr. p. 289–99. While it also heard evidence to the contrary, we will neither reweigh the evidence nor judge the credibility of the battling expert witnesses. Therefore, there is sufficient evidence in the record to support the trial court's determination that the Trustees acted properly by utilizing the clover/oats rotation.

### C. Tool Shed Construction

When considering Goodwine's argument that the language of the trust instrument prohibits the Trustees from constructing a new tool shed for Silver, we note that the document authorizes the Trustees to replace "existing or similar structures ... which during the term of this trust shall depreciate and deteriorate and become unrepairable [sic] where such replacements are necessary for the proper operation of said real estate and will contribute to the productivity of said real estate and the maintenance of the income productivity thereof as farm land...." Appellant's App. p. 11. Again evidencing the settlor's dual purposes, the Trust instrument unambiguously permits the Trustees to replace farm structures that have depreciated if the replacement is needed to contribute to the productivity of the farm—ensuring the legacy of the remainder beneficiaries—and to maintain the farm's income productivity—protecting the present income beneficiaries.

In support of their argument that the construction of a new tool shed was authorized under the trust instrument, the Trustees point to the following evidence that was presented at trial: (1) there are similar storage sheds on the farmland that are dilapidated, need to be replaced, and are not reparable to the extent that they are simply too small to fit Silver's equipment; (2) if Silver has a place to perform repair or maintenance work on days with inclement weather, he will be able to perform more outside work on days with good weather; (3) having a new shed would make Silver more productive; and (4) the Trustees believe that the new tool shed is necessary to provide good working conditions for Silver, to attract and retain high-quality tenants, and that the new shed is in the long-term interests of the farm. Appellees' App. p. 46–58, 172–78. Based on this evidence, we agree with the trial court that the language of the Deed of Trust unambiguously permits the Trustees to construct the tool shed, and further conclude that it will serve the settlor's purposes of protecting both current and future Trust beneficiaries.

With respect to Goodwine's argument that the Trustees breached their duties by planning to construct a new tool shed, the trial court properly held that the Trustees did not abuse their discretion. There is ample evidence in the record that this new tool shed will help to make Silver, a tenant farmer, more productive, will make the farmland more attractive to high-quality tenants, and is in the long-term interests of Goodwine Farms. This expense is appropriate pursuant to the terms and purposes of the trust instrument, and the

Trustees are not breaching any duties by constructing this tool shed.

Because the Trust instrument is unambiguous, we need not examine the underlying facts and circumstances existing at the time when the trust instrument was executed. In our view, the instrument itself permits the actions of the Trustees with respect to the crop rotation and the planned construction of a tool shed. Thus, there was no error on this basis.

### III. Trustees' Duties

Goodwine argues that the trial court erred by entering judgment for the Trustees because it improperly applied the Prudent Investor Act and the Uniform Principal and Income Act to the Trust. He further contends that the even if the Uniform Principal and Income Act does apply, the planned construction of the tool shed violates the statute.

### A. Prudent Investor Act

Among other things, the Prudent Investor Act requires that a trustee "who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule." I.C. § 30–4–3.5–1(a). The Prudent Investor Rule requires that a trustee "shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." *Id.* § 30–4–3.5–2(a). The lion's share of the Prudent Investor Act contemplates a trust with an investment portfolio for which an overall investment strategy is needed.

The trial court found that the Prudent Investor Act applies to the Trust in this case, further holding that the Trustees

complied with its provisions. Appellant's App. p. 24–25. Goodwine counters by arguing that the Prudent Investor Act does not apply to this case because the corpus of the trust is farmland, not a bank account or an investment portfolio.[3]

■■ There is little authority on the application of the Prudent Investor Act to trusts whose principal assets are something other than funds to be invested and managed, and we agree with Goodwine that the fit is not a comfortable one. But we need not decide whether the Prudent Investor Act applies because even assuming *arguendo* that the trial court erred in applying the Prudent Investor Act to this case, Goodwine cannot show any prejudice as a result thereof. The Prudent Investor Act serves as a *limitation* on the actions of a trustee, not as a set of rules giving him permission to act in ways in which he otherwise could not. Thus, if it does not apply to the Trustees, a set of restrictions has been lifted from them and they are freer to act than they would be if it did apply, and must merely act in accordance with the terms of the Deed of Trust. As we have already found above that they acted within the authority given to them by the Trust instrument, if the Prudent Investor Act does not apply then our analysis does not change.

### B. Uniform Principal and Income Act

■ Goodwine appears to argue that the Uniform Principal and Income Act ("UPIA"), Ind.Code § 30–2–14–1 *et seq.,* does not apply to the Trust. In the alternative, he contends that if the statute does apply, the planned construction of the tool shed does not comply with its provisions.

In brief, the UPIA regulates the manner in which a trustee may administer the

---

**3.** Goodwine does not argue in the alternative that if the Prudent Investor Act applies, the

Trustees are not in compliance with its provisions.

trust as a fiduciary with respect to his power to adjust between trust principal and income. I.C. § 30–2–14–15. Significantly, the UPIA requires that a trustee "shall administer a trust or estate in accordance with the terms of the trust or the will, even if there is a different provision in this chapter." I.C. § 30–2–14–14(a)(1).

Goodwine argues that the construction of the tool shed is an impermissible transfer of income to principal, pointing to a provision in the UPIA that prohibits such a transfer if the trustee is a beneficiary, as is the case here. Appellant's Br. p. 34; I.C. § 30–2–14–15(c)(7). But as noted above, the UPIA specifically mandates that the trust instrument controls over a contrary provision in the Act. We have already found above that the decision to construct the tool shed complies with the Deed of Trust, which takes precedence over the terms of the UPIA. Thus, we agree with the trial court's determination that the Trustees acted properly pursuant to the UPIA and the trust instrument.

We need not determine whether the UPIA applies to the Trust in this case because, similar to the Prudent Investor Act, the UPIA acts as a limitation on the actions of a trustee, and absent its application, the trustee must simply comply with the terms of the trust instrument. Inasmuch as we have already found that the Trustees' actions complied with the Deed of Trust and the settlor's intent and that their actions comply with the UPIA, under either scenario they have acted properly and have not breached their duties.

### CONCLUSION

The settlor intended to provide for current and future beneficiaries, safeguarding his legacy and his farmland. The Trustees have acted according to his intent and complied with the unambiguous Deed of Trust by employing a clover/oats rotation to protect and enhance the longevity of the soil, and by planning to construct a tool shed to help a current farmer tenant and to make the farmland more attractive to high-quality tenants in the future. Their actions have breached neither the spirit nor the letter of the trust instrument, nor any potentially applicable common law or statutory duties. There is no evidence in the record that they have in any way acted in bad faith or abused their discretion, and there is evidence in the record that all beneficiaries other than Goodwine have been happy with the Trustees. Therefore, the evidence supports the trial court's findings and the findings support its judgment.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and ROBB, J., concur.