Suzanne YOUNG, Appellant–Defendant,

v.

Mark ADAMS, Appellee–Plaintiff.

No. 53A05–0502–CV–60.

Court of Appeals of Indiana.

July 12, 2005.

Karen C. Horseman, Indianapolis, for Appellant.

Michael L. Carmin, Andrews Harrell Mann Carmin & Parker, P.C., Bloomington, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Suzanne Young appeals the trial court's entry of judgment in favor of her half

brother, Mark Adams, on his complaint against her for breach of contract. We reverse.

## Issue

Young raises six issues, however, we address the dispositive issue of whether an oral agreement for a commission upon finding a purchaser of real estate is barred by the writing requirement of Indiana Code Section 32–21–1–10.

## Facts

Young owned fifty acres of land in Bloomington that she decided to sell. She contacted a real estate broker and offered him a $75,000 commission if he found a purchaser for the property. When Young discussed this with Adams, whose real estate broker's license had previously expired, they allegedly agreed that she would pay him $50,000 if he found a purchaser for the property. The parties' alleged agreement was never reduced to writing.

At one point, Young suggested that if Adams saw the owner of the neighboring property, Kenneth Blackwell, he should see if Blackwell was interested in purchasing the property from Young. Young explained that Blackwell had previously indicated he was interested in buying the property. Shortly thereafter, Adams saw Blackwell at the gym where their sons played basketball together. Adams told Blackwell that Young wanted to sell the property and offered to show Blackwell the house located on the property. Blackwell was in fact interested, and Adams showed Blackwell around the house.

Blackwell and Young eventually entered into an agreement in which Blackwell would purchase the property for $2,800,000 contingent on the approval of a zoning change. The zoning change was not granted and the contract expired. Blackwell then found additional investors and eventually purchased the property from Young for $2,600,000.

Adams requested that Young pay him the $50,000 commission. Young refused, asserting that they never agreed to such. Adams eventually filed a complaint for breach of contract. Young answered, alleging that Adams was not entitled to the commission because the statute of frauds barred his claim, Adams was acting as an unlicensed real estate broker, no contract was formed, and Adams did not "find" Blackwell. Young filed a motion for summary judgment, which the trial court denied.

On September 13, 2004, the trial court held a bench trial. After the parties submitted post-trial briefs, the trial court entered judgment in favor of Adams. The trial court's order provided:

> Adams does not have a real estate broker's license. He previously had a broker's license but it lapsed and was not renewed. The parties agree that Adams may not maintain an action to recover a real estate commission because he does not have a real estate broker's license as required by Indiana Code 25–34.1–6–2

> Adams maintains that he is entitled to recover $50,000 from Young, notwithstanding Indiana Code Section 25–34.1–6–2, because he acted as a mere finder, and did not provide the activities of a broker. *First Federal Sav. Bank of Indiana v. Galvin,* (1993) Ind.App., 616 N.E.2d 1048, *transfer denied.* Young denies that she agreed to pay a fee to Adams. Young denies that Adams did act as a finder, because Young already knew Blackwell and knew Blackwell might be interested in her property. Young asserts that Indiana Code 32–21–1–10 (formerly Indiana Code 32–2–2–1) requires a written contract. Since there is no written contract between Adams

and Young, Young argues that her motion for Involuntary Dismissal, made at the close of Plaintiff's evidence should be granted.

\* \* \* \* \*

This Court concludes that the since [sic] the writing in the *Galvin* case was very minimal, and was not signed by the party being charged with the payment of the fee, that the absence of a written agreement in this case is not dispositive. The evidence clearly establishes that Young agreed to pay Adams $50,000.00 if Adams found a buyer for Young's property. Young reiterated the agreement in front of at least two witnesses. Adams fully performed his part of the agreement, so the fact that the agreement was not in writing does not prevent its enforcement.

The Court concludes that Adams did "find" a buyer for Young, even though Young knew Blackwell before Adams brought Blackwell to Young's house in the early summer of 2002. Young could have called Blackwell herself and asked him if he wanted to buy the house and land, but the fact is that she did not.

The Court concludes that Adams did not perform the activities of a broker, or participate in negotiating the transaction, so Adam's action for the finder's fee is not prohibited by Indiana Code 25–34.1–6–2.

Appellant's App. pp. 48–49. Young now appeals.

### Analysis [1]

■■■■ Young argues that the trial court improperly entered judgment in favor of

Adams. When reviewing a ruling where the trial court entered findings of fact and conclusions thereon, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Goodwine v. Goodwine*, 819 N.E.2d 824, 828 (Ind.Ct.App.2004). "In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* We do not reweigh the evidence, and consider only the evidence favorable to the trial court's judgment. *Id.* Young must establish that the trial court's findings are clearly erroneous, which occurs when a review of the record leaves us firmly convinced that a mistake has been made. *See id.* "We do not defer to conclusions of law, however, and evaluate them de novo." *Id.*

### I. Written Agreement

■■■ One question Young raises is whether the trial court properly concluded that the statute of frauds does not bar Adams's claim. "Whether a writing satisfies the statute of frauds is a question of law for the court." *Coca–Cola Co. v. Babyback's Intern., Inc.*, 806 N.E.2d 37, 42 (Ind.Ct.App.2004), *trans. denied.* Accordingly, our review of this question is de novo. *See Goodwine*, 819 N.E.2d at 828.

Indiana Code Section 32–21–1–10 provides:

A contract for the payment of any sum of money or thing of value, as a commission or reward for the finding or procuring by one (1) person of a purchaser for

---

1. Young frames her argument in terms of the denial of her motion for summary judgment, the denial of her motion for involuntary dismissal, and the judgment in favor of Adams. However, Young did not attempt to have any issues certified for interlocutory appeal, and it was not until the trial court entered judgment for Adams that there was a final order from with she could appeal. *See* Ind. Appellate Rule 9(A). We will address her claims based on the trial court's entry of judgment for Adams.

the real estate of another, is not valid unless the contract is in writing and signed by the owner of the real estate or the owner's legally appointed and duly qualified representative. . . .

■■■ "The statute is to protect *owners* against fraud; it is not to be used by owners to perpetrate a fraud on the one seeking a commission." *First Federal Sav. Bank of Indiana v. Galvin,* 616 N.E.2d 1048, 1055 (Ind.Ct.App.1993), *trans. denied.* These contracts are required to be in writing and signed by the owner "so that there may be no doubt of the existence of the contract, or dispute as to its provisions." *Price v. Walker,* 43 Ind.App. 519, 523, 88 N.E. 78, 79 (1909). "In an action for commissions against the owner of real estate sold, a substantial compliance with the terms of the statute will be required." *Id.*

The trial court's conclusion is based on *Galvin,* in which Galvin's long time friend and president of a bank agreed to pay him a 7% commission if he found a purchaser for a strip mall obtained by the bank in a foreclosure action. *Id.* at 1050. Galvin eventually found a purchaser but the bank offered only a 5% commission. *Id.* On appeal, we addressed whether certain writings were sufficient to satisfy Indiana Code Section 32–21–1–10.[2] *Id.* at 1055.

The first writing was a letter from Galvin to the bank's legal counsel indicating that the president of the bank had agreed to pay Galvin a 7% commission. *Id.* at 1051. The bank did not contradict this representation. *Id.* The other writing consisted of minutes from a bank committee meeting which stated, " 'It was originally approved to pay Frank Galvin a finder's fee of 7% should [the strip mall] be sold for $1,200,000. After a brief discussion, it was agreed that a finder's fee of 3½% will be paid . . . should [the strip mall] sell for less than $1,200,000, providing the Bank nets $800,000." ' *Id.* at 1055–56. Because it was undisputed that the bank had agreed to pay Galvin a commission, we concluded the crux of the disagreement was not whether a contract existed but whether the amount of the commission was contingent on a certain purchase price. *Id.* at 1056.

We held that where the bank clearly agreed to pay Galvin a commission and Galvin performed his part of the bargain, Indiana Code Section 32–21–1–10 did not prevent the enforcement of the agreement against the bank. *Id.* We further held that the amount of the commission was a question of fact for a jury. *Id.; see also Wehry v. Daniels,* 784 N.E.2d 532, 536 (Ind.Ct.App.2003) (observing that if the parties dispute a contractual term, their dispute raises a factual issue for the trier of fact).

■■■ Here, the trial court determined that because the writings in *Galvin* were "very minimal" and not signed by the bank, "the absence of a written agreement in this case is not dispositive." Appellant's App. p. 49. We disagree. Although the writings in *Galvin* were not lengthy, they were evidence of the agreement between Galvin and the bank. Here, there is no such written evidence that an agreement exists.[3] Also, the second writing in *Galvin* consisted of minutes from a bank commit-

**2.** Formerly Indiana Code Section 32–2–2–1.

**3.** We note that the parties offered very contentious emails into evidence at the trial. However, these emails appear to be written shortly after Young entered into the first purchase agreement with Blackwell. Moreover, in the emails the parties strongly disagree as to whether they had reached a commission agreement. They do not constitute written evidence of an agreement and no one argues such.

tee meeting. Even if such is not considered "signed" by owner of the real estate as the trial court concluded, the signature requirements were not at issue on appeal and it was undisputed that the bank acknowledged the agreement during the committee meeting. Here, however, no written evidence was produced in which Young acknowledged an agreement to pay Adams a commission. In fact, the parties still dispute whether Young ever agreed to pay Adams a commission. Unlike *Galvin*, where the parties only disputed the terms of the agreement, we are faced with a situation in which the parties do not agree that a contract existed.

If we were to agree with the trial court's conclusion that the absence of a written agreement is not dispositve, we would essentially obliterate the purpose of Indiana Code Section 32–21–1–10, which seeks to avoid the very dispute before us today by requiring that such agreements be reduced to writing. In this case, no writing was made and the parties dispute the existence of an agreement between them. We are unwilling to conclude that Indiana Code Section 32–21–1–10 is satisfied by evidence other than some form of writing indicating that the owner of property agreed to pay a commission to someone who finds a purchaser for that property.

Thus, the facts of *Galvin* are distinguishable from those before us today. We decline to read Indiana Code Section 32–21–1–10 in a manner that eliminates the requirement that such agreements be reduced to writing. Because there is no written evidence of a commission agreement between Young and Adams, we conclude that any agreement violates Indiana Code Section 32–21–1–10.

## II. Part Performance

Adams asserts that even if his agreement with Young does not satisfy Indiana Code Section 32–21–1–10, his performance took the agreement out of the purview of the statute. As we recognized in *Galvin*, in furtherance of the policy to prevent dispute over the terms of a commission agreement to protect owners against fraud, performance by the finder or broker may take the agreement out of the provisions of Indiana Code Section 32–21–1–10. *Galvin*, 616 N.E.2d at 1055. Adams asserts, "There [is] no dispute that Adams spoke to the eventual buyer of the property and was responsible for the buyer viewing the property which led directly to the purchase of the property by the buyer." [4] Appellant's Br. p. 8.

Although that may be the case, we are not convinced that the doctrine of part performance applies to the writing requirement of Indiana Code Section 32–21–1–10. The authority on this issue is sparse at best. It is true that in *Voelkel v. Berry*, 139 Ind.App. 267, 270, 218 N.E.2d 924, 926 (1966), we acknowledged part performance in a dispute over a commission agreement. In that case, however, we did not reach the merits of the performance and decided the case on other grounds. *Id.* We observed:

> The demurrer was based upon two grounds: (1) the oral contract was within the statute of frauds, and (2) the plaintiff had failed to allege that he was a licensed real estate broker .... *Appellant has well argued that part performance has taken the cause from the con-*

---

**4.** Because he was not a licensed real estate broker, Adams walks a fine line when he makes the argument that he partially performed. Indiana Code Section 25–34.1–3–2 prohibits unlicensed individuals to act as real estate brokers. Thus, if Adams's performance of the contract amounted to him acting as a broker, any contract between him and Young would be void. *See Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 385 (Ind.1997) ("Generally, a contract made in violation of a statute is void.")

*fines of the statute of frauds;* however, it is our opinion that he has failed in refuting the second basis for the demurrer. *Id.* (emphasis added). This case has since been cited as authority for the proposition that "performance by the finder or broker may take the agreement out of the provisions of [Indiana Code Section 32–21–1–10]." *Galvin,* 616 N.E.2d at 1055. We observe, however, that the emphasized statement in *Voelkel* was dicta and not essential to its outcome.

 In *Price,* however, we addressed the application of the doctrine of part performance to a statute substantially similar to Indiana Code Section 32–21–1–10. *Price,* 43 Ind.App. at 523, 88 N.E. at 79. We acknowledged the argument that if the procuring of a purchaser for the real estate constitutes such part performance of the contract so as to entitle the finder to a commission, then when such a purchaser is procured, the finder would be entitled to collect a commission, although the contract was not in writing and signed by the owner. *Id.* We rejected this notion and concluded, "Such construction would *render the statute of no effect.* The mere performance of services which may be compensated for in damages is not sufficient to take the case out of the statute." *Id.* (emphasis added).

We agree with the rationale in *Price,* and conclude that allowing part performance to take an agreement out of Indiana Code Section 32–2–1–10 would essentially render the statute of no effect. Although Adams's actions of talking to Blackwell and showing him around the house might be considered part performance, they are insufficient to take the agreement out of the writing requirement of Indiana Code Section 32–21–1–10.

 Even if we were to conclude otherwise, Adams's part performance must be such that it establishes the existence of a contract. "The degree or amount of performance required must, by necessity, vary with every case and be adapted to fit the situation of that case." *McMahan Const. Co. v. Wegehoft Bros., Inc.,* 170 Ind.App. 558, 564, 354 N.E.2d 278, 282 (1976). Part performance sufficient for an agreement to be taken out of the statute of frauds requires that "the acts done must be clear and definite and unequivocal and they must be done clearly and exclusively under the contract relied upon and not under some other contract." *Sourbier v. Claman,* 101 Ind.App. 679, 689, 200 N.E. 721, 725 (1936). In other words, part performance takes an agreement out of the statute of frauds if it is done in reliance on the benefit of the bargain.

 That is not the case here. The parties agree that Young suggested that if Adams saw Blackwell at the gym where their sons played basketball together, Adams should inquire as to Blackwell's interest in the property. Adams testified that he got in touch with a friend who worked with Blackwell and suggested that the friend ask Blackwell if he was interested in Young's property. The friend did not follow through, and Adams did not pursue the matter further until he ran into Blackwell at the gym during a basketball game. At the gym, Adams indicated that Young was interested in selling the property for $2,800,000. Adams then arranged for Blackwell to see Young's house. Adams and Young showed Blackwell around the house.

Given that Adams and Young are siblings and, as Adams testified, had an "extremely close" relationship in which they visited and spoke to each other on the phone several times a week, we cannot conclude that Adams helped Young only because he would receive a commission.

Tr. p. 18. His actions could very likely have been based on his relationship with Young and required little proactive measures. Adams did not establish that his actions were performed clearly and exclusively in reliance on the agreement. *See Sourbier,* 101 Ind.App. at 689, 200 N.E. at 725. Accordingly, Adams's performance alone was insufficient to remove the alleged agreement from the writing requirement of Indiana Code Section 32–21–1–10.

### Conclusion

Indiana Code Section 32–21–1–10 requires that an agreement for a commission upon finding a purchaser of real estate be in writing, and applying the doctrine of part performance to this statute would render it meaningless. Regardless, Adams's actions did not establish that he clearly and exclusively performed in reliance on the agreement. We reverse.

Reversed.

KIRSCH, C.J., and BAKER, J., concur.