849 N.E.2d 1191 (2006)
In the Matter of the TRUST CREATED UNDER The LAST WILL AND TESTAMENT OF Eldo H. STONECIPHER, Dated August 26, 1988,
Meriam P. Graninger, Income Beneficiary, Appellant-Respondent,
v.
National City Bank Of Indiana, Trustee, Appellee-Petitioner.
No. 49A02-0508-CV-795.
Court of Appeals of Indiana.
June 30, 2006.
*1193 David W. Gray, Lewis & Kappes, Indianapolis, IN, Attorney for Appellant.
Jarrell B. Hammond, Anthony M. Eleftheri, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellee.

OPINION
NAJAM, Judge.

STATEMENT OF THE CASE
Meriam Graninger appeals from the trial court's order finding that the trustee of a testamentary trust did not abuse its discretion by refusing Graninger's request for a discretionary distribution of principal from the trust. On appeal she raises a single issue for review, namely, whether the trial court erred when it entered that order.
We affirm.

FACTS AND PROCEDURAL HISTORY
Graninger, formerly Meriam Stonecipher, was married to Eldo Stonecipher ("Stonecipher") at the time of Stonecipher's death. In his will, Stonecipher established two testamentary trusts, which were funded by the residuary of Stonecipher's estate after specific bequests. The trusts name Graninger as the income beneficiary for life and Stonecipher's two adult daughters, from Stonecipher's prior marriage, as the remainder beneficiaries. The first trust ("Trust A") was funded using as much of Stonecipher's estate as possible yet still being able to be deductible from his estate for federal estate tax purposes. The remainder of Stonecipher's residuary estate funded the second trust ("Trust B"), which is not at issue in this appeal. National City Bank ("the Trustee") is the trustee of both trusts.
Under the terms of the trust document, Graninger is to receive the income from Trusts A and B for life. Additionally, Graninger may request annual distributions of principal up to $5000 or five percent of the value of the aggregate principal of Trust A on December 31 each year, whichever is greater ("5 & 5 election"). Trust A also provides in Item V.A.4. for discretionary distributions of principal as follows:
Whenever the trustee determines that the income of [Graninger], from all sources known to the trustee, is not sufficient for her reasonable health, support, and maintenance, the trustee shall pay to her such sums as the Trustee determines to be required for those purposes from the principal of the trust. In the exercise of its discretion, the Trustee shall be concerned primarily with the support, health and maintenance [of] wife during her lifetime, according to the standard of living which she and I enjoyed before my death or according to her actual needs. In addition, prior to distribution of any principal of the trust under this section, my trustee shall also consider the extent to which funds would be available to my wife to meet her support, maintenance and health needs by the use of her power of withdrawal *1194 and the amount of those funds still available to her which have previously been withdrawn which could meet those needs but such consideration shall not be absolutely determinative of the exercise of the trustee's discretion.
Appellant's App. at 10.
Since the Trusts were funded, Graninger has received $4500-$5000 per month in income and/or principal distributions under the 5 & 5 election.[1] And to date, the Trustee has paid approximately $250,000 to her under the 5 & 5 election. The most recent 5 & 5 election distribution was made in early 2004 in the amount of $31,094.
Graninger is in ill health. As a result, she has received in-home nursing assistance for a minimum of 14 hours per day since December 2002, and those hours are expected to increase. The 2003 cost of the in-home nursing care is alleged to be more than $10,000 per month.
In 2004, Graninger's current husband asked the Trustee to "guarantee that the 5 & 5 distribution would not affect the $4,500 monthly amount paid to Graninger." Appellee's Brief at 8. After that request was made, the Trustee became concerned because "the interest income generated by the Trust was insufficient to enable it to continue making $4,500 monthly payments without significantly invading the principal." Appellee's Brief at 8. Thus, the Trustee interpreted the request for the guarantee as a request to "continue to make discretionary distributions of trust principal."[2]Id. (emphasis in original).
As a result of the request from Graninger's current husband, the Trustee reviewed the trust document to discern Stonecipher's intent regarding discretionary distributions of principal. The Trustee also obtained from Graninger documentation of her other assets and income. After reviewing the documentation and the trust document, the Trustee's Discretionary Distribution Committee denied the request for guaranteed discretionary distributions of principal from Trust A. After obtaining and reviewing further documentation from Graninger, the committee met again and reaffirmed its prior decision. Specifically, the Committee "noted Stonecipher's clear and unambiguous intent to provide for his children (by making them remainder beneficiaries under the Trust) and found that in-home health-care costs in excess of $10,000 per month was [sic] excessive and unreasonable." Appellee's Brief at 11.
In November 2004, the Trustee filed its Petition to Docket Trust with Court, seeking instruction from the trial court regarding the payment of principal from Trust A for the benefit of Graninger and that its appointment as Trustee be confirmed. After a hearing, the trial court entered its order finding that the Trustee had "not abuse[d] its discretion in determining that discretionary distributions of principal, as requested by Ms. Graninger, were not appropriate." Appellant's App. at 4. This appeal ensued.

DISCUSSION AND DECISION

Standard of Review
Several relevant principles guide trustees in the administration of a trust unless the language of the trust instrument provides otherwise. Goodwine v. Goodwine, 819 N.E.2d 824, 828 (Ind.Ct. *1195 App.2004). In particular, the trustee must administer the trust according to its terms. Id.; Ind.Code § 30-4-3-6(b). Moreover, the trustee must preserve the trust property and make it productive for both income and remainder beneficiaries. Goodwine, 819 N.E.2d at 828. Finally, the trustee must administer the trust in a manner that is consistent with the Prudent Investor Act, Indiana Code Sections 30-4-3.5-1 through -13. Id. at 828-29.
There are few Indiana cases that deal with a trustee's discretion in the administration of a trust, but that issue was addressed in Goodwine. When we evaluate the actions of a trustee and the trustee has been vested with discretion, we will not disturb the trustee's determinations unless there has been an abuse of that discretion. Goodwine, 819 N.E.2d at 828. Thus, where a trustee determines that it is necessary and proper to use trust assets for a certain purpose, we will not interfere unless the trustee acted in bad faith or in some way abused or unreasonably exercised his discretion. Id.
In construing a trust instrument, the primary objective is to ascertain and carry out the settlor's intent. Id. at 829. If the settlor's intent is clear from the plain language of the instrument and is not against public policy, we must give effect to that intent. Id. Indeed, if the rules of law and the terms of the trust conflict, the terms of the trust shall control "unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." Ind.Code § 30-4-1-3.
We examine the trust document as a whole to determine the plain and unambiguous purpose of the settlor as that intent appears within the four corners of the instrument. Goodwine, 819 N.E.2d at 829. To determine the settlor's intent, courts look first to the language used in the trust instrument. Id. If the terms of the trust instrument are not ambiguous, a court may examine only the document itself to determine the settlor's intent. Id.
We note that the trial court made no special findings in its judgment. When a party is appealing from a general judgment of the trial court, this court views the evidence in the light most favorable to the appellee. In re Estate of Dellinger v. 1st Source Bank, 793 N.E.2d 1041, 1042 (Ind.2003). We do not reweigh evidence or consider witness credibility, and we will affirm the judgment if it is sustainable upon any theory consistent with the evidence. Perdue Farms v. Pryor, 683 N.E.2d 239, 240 (Ind.1997). In reviewing a general judgment, an appellate court must presume that the trial court correctly followed the law. Id. On appellate review, due regard must be given the trial court's opportunity to judge the credibility of witnesses, and the judgment should not be set aside unless clearly erroneous. Ind. R. Trial P. 52(A); Ind.App. R. 15.

Discretionary Principal Distribution
In its petition, the Trustee asked the trial court to determine whether the Trustee properly exercised its discretion in administering the Trust. Specifically, the Trustee asked whether its denial of Graninger's request for a discretionary distribution of principal was an abuse of its discretion. On this record, we agree with the trial court that Graninger has not shown that the Trustee abused its discretion.
As noted above, the provision at issue here allows Graninger, as the income beneficiary, to request discretionary distributions of principal for "her reasonable health, support, and maintenance . . .." Appellant's App. at 10 (emphasis added). In exercising its discretion regarding such *1196 disbursements, the trust provides that the "Trustee shall be concerned primarily with the support, health and maintenance [of] wife during her lifetime, according to the standard of living which she and I enjoyed before my death or according to her actual needs." Id. The Trustee testified that it considered the intent of the settlor when he established the trust and determined that it had an obligation to the remainder beneficiaries as well as the income beneficiary.[3] The Trustee also noted that its primary concern, as defined in the trust instrument was either Graninger's "support, health and maintenance" or her "actual needs." Appellant's App. at 36. The Trustee based its decision not to make a discretionary distribution of principal after considering Graninger's actual needs.
The Trustee testified that in determining not to make a discretionary distribution of principal it considered the following: Graninger's social security benefits; her Wachovia account containing her personal portfolio, valued at approximately $600,000; her interest in the Oswalt trust at Irwin Union, valued at approximately $495,000; her Elfun Fund retirement account; her prenuptial agreement; and the history of 5 & 5 distributions totaling $250,000. The trustee also looked at alternative healthcare considerations and the facts that the Stoneciphers' was a second marriage and that the remaindermen were children from Stonecipher's prior marriage. The Trustee also considered "extensive gifting" by Graninger, some of which had come from her personal funds.[4] In 2003, Graninger's income totaled $141,923.[5]
The Trustee should not have considered assets that do not constitute income when it decided not to make a discretionary distribution of principal under Item V.A.4. Thus, the Trustee should only have considered $141,923 in income and should not have considered Graninger's interest in the Irwin Trust assets or the Eflun Fund. The Trustee also should not have considered the balance in Graninger's Wachovia account.
Item V.A.4. in Trust A unambiguously states that the Trustee may make a discretionary distribution of principal only if Graninger's income from all sources is insufficient to meet her "reasonable health, support, and maintenance[.]" Appellant's App. at 10 (emphases added). According to the summary of income and expenses prepared by Graninger, in 2003 her total income was $141,923. The Trustee testified that it has a "lot of beneficiaries [at] various and sundry healthcare institutions and some being cared for at home" and, therefore, has "some general idea of what is considered normal customary practice and what those costs are." Transcript at 24. The Trustee considered the $122,765 Graninger spent for home health care services to be excessive and, therefore, not reasonable. Graninger's son testified that *1197 Stonecipher received home health care in the two years leading up to his death, but Graninger presented no evidence regarding the total cost of Stonecipher's home healthcare, the length of time that Stonecipher received in-home care, or the reasonableness of Graninger's home health care expenses. Graninger also failed to present evidence of the cost of her healthcare alternatives. As a result, Graninger failed to demonstrate that the trustee abused its discretion when it concluded that Stonecipher's healthcare costs were not reasonable or exceeded her actual needs.
We also find that the Trustee did not abuse its discretion when it interpreted Graninger's request for a guarantee as a request to "continue to make discretionary distributions of trust principal." Appellee's Brief at 8 (emphasis in original). The Trustee testified that Graninger had originally requested monthly distributions between $4500 and $5000. Since Graninger first started receiving distributions from the trust, she "would exercise her five by five power . . . [to] be applied to level out the distribution, which would be part income and part principal level throughout the year." Transcript at 17. As noted above, distributions made under the 5 & 5 election were not discretionary. But Graninger's request that the amount of the monthly distribution remain unchanged gave the Trustee pause. Indeed, the Trustee testified about its concern that it could not honor such a request "in today's economy" without making discretionary principal distributions. Transcript at 18. Income necessarily fluctuates with the economy and also as the principal decreases due to distributions made under the 5 & 5 election. Thus, Graninger's request that the amount of her monthly distributions remain constant was tantamount to a request that the Trustee guarantee discretionary distributions of principal.
In sum, Graninger has not met her burden of showing that the trustee abused its discretion when it denied her request for discretionary distributions of principal from Trust A. As noted above, Graninger's income from all sources totaled $141,923 in 2003. In addition, Graninger gave gifts of up to $180,000 over a two- to three-year period. She cannot deplete her assets and then claim that her income is insufficient to meet her needs. On these facts, we cannot say that the trial court clearly erred when it found that the Trustee did not abuse its discretion when it denied Graninger's request for a discretionary distribution of principal.
Affirmed.
ROBB, J., and FRIEDLANDER, J., concur.
NOTES
[1] It is unclear in the record whether the monthly distributions are from Trust A only or are from both trusts.
[2] The Trustee cited to both parties' appendices in support of its assertion that prior discretionary distributions of principal had been made. But the cited pages to not support that assertion.
[3] The Trustee testified via its Senior Vice President and Senior Fiduciary Officer, Regina Smith.
[4] Graninger's son testified that Graninger may have given up to $180,000 to her grandchildren, but there was no evidence of the exact amount. Graninger's son testified further that those gifts were made from the proceeds of the sale of Graninger's residence to the son over a two- to three-year period.
[5] According to the income and expenses table prepared by Graninger's son, the income sources are as follows: Oswalt Trust ($8489); Stonecipher Trust ($54,000); Wachovia account ($27,336); Elfun Fund ($5086); Social Security ($14,616); and interest from savings and checking ($1300). Graninger also received a $31,094 5 & 5 principal distribution in January 2004 in response to a 2003 principal distribution request. Graninger considered that distribution to be 2003 income.