## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2016, 5:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John J. Schwarz, II
Schwarz Law Office, PC
Hudson, Indiana

ATTORNEY FOR APPELLEES

Robert M. Hamlett
Frank & Kraft, A Professional Corporation
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

In the Matter of the Revocable Living Trust Agreement of Joseph W. Dague and the Revocable Living Trust Agreement of Dorothy K. Dague, both dated January 11, 1994, as amended April 1, 1999, and May 22, 2001.

Jeffrey N. Dague and Judith K. Uhrich,

*Appellants-Respondents,*

v.

December 30, 2016

Court of Appeals Case No.
25A05-1602-TR-240

Appeal from the Fulton Circuit Court

The Honorable A. Christopher Lee, Judge

Trial Court Cause No.
25C01-1503-TR-22

Jean E. Galloway and Joseph E. Dague,

*Appellees-Petitioners*

**Crone, Judge.**

# Case Summary

Jeffrey N. Dague, Judith K. Uhrich, James L. Dague, Jean E. Galloway, and Joseph E. Dague ("Joseph E."), are siblings and remainder beneficiaries of their parents' trusts. The trusts named Jeffrey and Judith as trustees ("Trustees") and directed that after both parents died, the family farm be leased to James to farm for a period of five years, after which it could be sold and the proceeds equally distributed to the beneficiaries. The siblings disagreed as to when the five-year period expired. A little over four years after their mother died, Jean and Joseph E. ("Petitioners") filed a petition to docket the trusts. When an agreement as to the expiration of the five-year period could not be reached, Petitioners filed a motion for order of sale. The trial court granted the motion and ordered Trustees to retain a specific company to sell the farm at a public auction ("the Order").

Trustees appeal the Order, contending that by ordering them to sell the farm in a specific manner, the trial court infringed upon the broad discretion granted to

them in the trusts.  We agree, and therefore we reverse and remand for further proceedings.

## Facts and Procedural History[1]

[3] On January 11, 1994, Joseph W. Dague and Dorothy K. Dague each executed a revocable living trust agreement, amended on April 1, 1999, and May 22, 2001[2] (collectively referred to as "the Trust Agreements"), which placed one-half of their 503.26-acre farm ("the Dague Farm") into each trust.  Joseph died on June 26, 2009, and Dorothy died on February 13, 2011.  Pursuant to the Trust Agreements, upon the death of both Joseph and Dorothy, Jeffrey and Judith became Trustees of both trusts.  The Trust Agreements granted Trustees the authority "to exercise all the powers in the management of the Trust Estate which any individual could exercise in the management of similar property owed in its own rights."  Appellants' App. at 26, 55.

---

[1] Both parties' briefs fail to comply with the Indiana Appellate Rules in several respects.  Trustees' brief does not provide any citations to the record in its statement of the case, which is contrary to Appellate Rule 46(A)(5).  Also, Trustees' brief fails to set forth the statement of the facts in narrative form, which is contrary to Appellate Rule 46(A)(6).  Petitioners' brief contains subjective argument in its statement of the case and its statement of the facts, which is contrary to Appellate Rule 46(A)(6) and -(7).  *See also New v. Pers. Representative of Estate of New*, 938 N.E.2d 758, 765 (Ind. Ct. App. 2010) (statement of facts section of appellant's brief shall neither omit relevant facts nor contain subjective argument), *trans. denied* (2011).  In addition, Petitioners' brief fails to support numerous factual assertions with citations to the record and includes factual assertions that are irrelevant to the issues presented and have not been subject to an evidentiary determination.  Trustees request in their reply brief that we strike or ignore Petitioners' unsupported, irrelevant factual assertions, and they provide a list of thirteen of these.  Appellants' Reply Br. at 5-6.  We will ignore the factual assertions that are irrelevant and unsubstantiated.  However, statements number 7 and 8 listed on pages five and six of Trustees' reply brief consist of argument rather than factual assertions and are therefore appropriate for our consideration.  Finally, both parties' appendices fail to include the date of each item in the table of contents, which is contrary to Appellate Rule 50(C), and Petitioners' appendix includes a copy of the transcript, which is contrary to Appellate Rule 50(F).

[2] Dorothy's second amendment was executed on July 9, 2001.

[4] Joseph's and Dorothy's second amendments to the Trust Agreements ("the Second Amendments") directed Trustees to administer the Dague Farm as follows:

> The [Dague Farm] shall be retained in trust for the benefit of Settlor's children for a period of five (5) years. During that time period, the [Dague Farm] shall be crop-leased to Settlor's sons [sic] James L. Dague and/or his son Andy Dague on the basis of the existing lease rates for similar land in the county for each growing season with the net lease payments paid out in equal shares to Settlor's children per stirpes. After said five (5) year period, the [Dague Farm] may be sold and the net proceeds divided between and among Settlor's children in equal shares, share and share alike, per stirpes unless all beneficiaries of the sale agree to continue the leasing of the farm on a year-to-year basis.

*Id*. at 43-44, 72-73. The Second Amendments further provided that the "rest residue and remainder of the trust estate shall be distributed to Settlor's children," Jeffrey, Judith, James, Jean, and Joseph E. *Id*. at 44, 73.

[5] From 2011 through 2015, James leased the Dague Farm each crop year. In May 2015, Petitioners filed a petition to docket trusts and a petition for accounting, removal of Trustees, and appointment of successor trustees. The trial court entered an order authorizing the docketing of trusts and an order on petition to require accounting. Trustees filed a statement of accounts pursuant to Indiana Code Section 30-4-5-13 (governing the content of statements of accounts filed with the court), and a supplemental accounting.

[6] In August 2015, Petitioners filed a petition for instructions and an objection to accounting. In their petition for instructions, Petitioners asserted that Trustees had failed to provide them with a copy of Joseph's Second Amendment, and they argued that if Joseph had not executed the Second Amendment, then Trustees should have sold Joseph's half of the Dague Farm immediately following Dorothy's death. Petitioners also argued that if Joseph had executed the Second Amendment, then the five-year period provided for James to lease the Dague Farm would expire on February 13, 2016. Petitioners asked the trial court to enter an order instructing Trustees to "immediately place the [Dague Farm] for sale in a commercially reasonable manner" with the closing to take place after January 1, 2016, and before March 1, 2016. *Id*. at 80.

[7] In September 2015, Petitioners filed a supplement to their petition for instructions, asserting that Trustees' counsel had informed them that "no [S]econd [A]mendment to the Joseph's Trust ha[d] been found." *Id*. at 82. Petitioners again asserted that in the absence of Joseph's Second Amendment, Trustees were required to distribute the assets of Joseph's trust upon Dorothy's death.

[8] Trustees filed a motion to dismiss Petitioners' petition for instructions and supplement thereto, arguing that Petitioners lacked statutory authority to petition for instructions, that Trustees believed that the five-year retention period for the lease of the Dague Farm did not expire until the end of 2016, and that Petitioners' request for instructions as to selling the Dague Farm was

premature and infringed upon Trustees' discretion regarding the management and disposition of trust property.

[9] In September 2015, the trial court heard argument on Petitioners' petition for instructions and Trustees' motion to dismiss. Apparently, by the time of the hearing, Trustees had produced Joseph's executed Second Amendment, so Petitioners abandoned their argument that Trustees were required to sell Joseph's half of the Dague Farm when Dorothy died. However, Trustees and Petitioners continued to dispute when the five-year retention period for the lease of the Dague Farm to James would expire. Petitioners argued that it would expire February 13, 2016, exactly five years after Dorothy's death. Trustees argued that because the Dague Farm was already under lease when Dorothy died, the five-year retention period did not begin to run until 2012 and would not expire until the end of 2016. In addition, Trustees continued to argue that Petitioners had no statutory authority to ask for instructions pertaining to the sale of the Dague Farm and that any such instructions were premature and infringed upon Trustees' discretion as to how the farm would be sold. At the conclusion of the hearing, the trial court took the matter under advisement and ordered the parties to participate in mediation. In November 2015, the parties participated in mediation but did not reach a settlement.

[10] On December 2, 2015, Petitioners filed a motion for order of sale, asserting that mediation was unsuccessful and that the parties continued to dispute when the five-year retention period terminated; that under the plain terms of the Trust Agreements, the five-year retention period would end on February 13, 2016;

and that Trustees were obligated to sell the Dague Farm after the retention period terminated. Petitioners stated that Halderman Real Estate Services, Inc. ("Halderman"), and Schrader Real Estate and Auction Co., Inc. ("Schrader"), were capable of auctioning the Dague Farm and requested that the trial court instruct Trustees to retain Halderman, or Schrader if Halderman was unavailable, to auction the Dague Farm on or before February 29, 2016, with the net proceeds to be divided in equal shares among the beneficiaries. Appellees' App. at 49-52.

[11] On December 14, 2015, the trial court entered its Order granting Petitioners' motion for order of sale, finding that the five-year retention period ends on February 13, 2016, and that the Petitioners' request that preparations for the sale begin before the end of that period is a reasonable request, and concurring in Petitioners' request that Halderman or Schrader be contacted by Trustees. The Order then provides, "Trustees are ordered to immediately contact [Halderman] to determine its availability to conduct a public auction of the [Dague] Farm, including the house, barns and other accessory structures, on or before February 29, 2016, and if it is available, to engage Halderman to conduct the auction." Appellants' App. at 14. The Order also provides that if Halderman was not available to sell the farm at public auction, Trustees were to contact Schrader.

[12] On December 21, 2015, Trustees filed a response and objection to Petitioners' motion for order of sale. On December 31, 2015, Trustees filed a motion to correct error.[3] The trial court denied the motion to correct error without a hearing. On February 1, 2016, Trustees filed a notice of appeal and a motion for stay. On April 21, 2016, the trial court issued an order granting Trustees' motion for stay and ordered Trustees to continue to manage the Dague Farm pending further order.

## Discussion and Decision

[13] Trustees first argue that the trial court erred by considering and granting Petitioners' petition for instructions and failing to grant Trustees' motion to dismiss. The petition for instructions and supplement thereto focused on the absence of Joseph's Second Amendment and the expiration of the five-year retention period. The existence of Joseph's Second Amendment is no longer an issue, and Trustees do not challenge the portion of the Order that finds that the five-year retention period expired on February 13, 2016. Therefore, we need not address Trustees' argument regarding Petitioners' petition for instructions and turn to the remaining issue raised by Trustees.

[14] Trustees contend that the trial court improperly infringed upon the discretion granted to them under the Trust Agreements by specifically ordering them to

---

[3] Neither Trustees' response and objection to Petitioners' motion for order of sale nor their motion to correct error are included in the record before us.

list the Dague Farm with Halderman to be sold at public auction. We agree.

In discussing this issue, we begin by noting that

> [s]everal relevant principles guide trustees in the administration of a trust unless the language of the trust instrument provides otherwise. In particular, the trustee must administer the trust according to its terms. Ind. Code § 30-4-3-6(b). Moreover, the trustee must preserve the trust property and make it productive for both income and remainder beneficiaries. Finally, the trustee must administer the trust in a manner that is consistent with the Prudent Investor Act, Indiana Code Sections 30-4-3.5-1 through -13.

> When we evaluate the actions of a trustee and the trustee has been vested with discretion, we will not disturb the trustee's determinations unless there has been an abuse of that discretion. Thus, where a trustee determines that it is necessary and proper to use trust assets for a certain purpose, *we will not interfere unless the trustee acted in bad faith or in some way abused or unreasonably exercised his discretion.*

> In construing a trust instrument, the primary objective is to ascertain and carry out the settlor's intent. If the settlor's intent is clear from the plain language of the instrument and is not against public policy, we must give effect to that intent. Indeed, if the rules of law and the terms of the trust conflict, the terms of the trust shall control "unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." Ind. Code § 30-4-1-3.

*In re Trust Created Under Last Will & Testament of Stonecipher*, 849 N.E.2d 1191, 1194-95 (Ind. Ct. App. 2006) (emphasis added) (citations omitted).

[15]     Here, the Trust Agreements grant Trustees broad powers:

By way of illustration and not of limitation and in addition to any inherent, implied or statutory powers granted to trustees generally, the Trustee[s are] specifically authorized and empowered with respect to any property, real or personal, at any time held under any provision of this Trust:  to allot, allocate between principal and income, assign, borrow, buy, care for, collect, compromise claims, contract with respect to, continue any business of the Settlor, convey, convert, deal with, dispose of, enter into, exchange, hold, improve, incorporate any business of the Settlor, invest, lease, manage, mortgage, grant and exercise options with respect to, take possession of, pledge, receive, release, repair, sell, sue for, to make distributions of divisions in cash or in kind or partly in each without regard to the income tax basis of such asset, and in general *to exercise all the powers in the management of the Trust Estate which any individual could exercise in the management of similar property owned in its own right*, upon such terms and conditions as to the Trustee[s] may seem best, and to execute and deliver any and all instruments and to do all acts which the Trustee[s] may deem proper or necessary to carry out the purpose of this Trust, without being limited in any way by the specific grants of power made, and without necessity of a court order.

Appellants' App. at 25-26, 54-55 (emphasis added).  Therefore, the Trust Agreements provide Trustees with complete discretion in determining the manner in which the Dague Farm should be sold.

[16]     We reiterate that "[t]he court may not interfere with [the] discretionary power of the trustee in the absence of a showing of fraud, bad faith or an arbitrary abuse of such discretion." *State ex rel. Anderson-Madison Hosp. Dev. Corp. v. Superior Court of Madison Cty.*, 245 Ind. 371, 378, 199 N.E.2d 88, 91 (1964); *see also Bray v. Old Nat'l Bank in Evansville*, 113 Ind. App. 506, 517, 48 N.E.2d 846,

850 (1943) ("[W]here a trustee is granted discretionary powers the court will not substitute its discretion for that of the trustee in the absence of a showing of fraud or abuse of discretion."); *Husted v. Sweeney*, 113 Ind. App. 418, 427, 48 N.E.2d 1004, 1008 (1943) ("The courts will not exercise the trustee's discretion for him.") (citing 3 BOGERT ON TRUSTS & TRUSTEES § 559 at 1787); *Robison v. Elston Bank & Trust Co.*, 113 Ind. App. 633, 650-51, 48 N.E.2d 181, 187 (1943) ("[W]here a trustee has been vested with discretion he will not be disturbed in the reasonable exercise thereof, but where there is a failure to exercise such discretion in a reasonable manner the courts will intervene.") (citing I RESTATEMENT OF TRUSTS § 187). Here, there is no evidence that Trustees abused their discretion or acted in bad faith or unreasonably in managing the trusts that would justify the trial court's intervention. When the trial court issued the Order, the deadline for selling the Dague Farm was two months in the future; the Trustees cannot be considered to have acted unreasonably by not doing something that they did not yet have a legal obligation to do. We conclude that the Order is contrary to the will and desire of Joseph and Dorothy, who chose Jeffrey and Judith to be Trustees and granted them complete discretion to manage and dispose of the Dague Farm. Accordingly, we reverse the Order directing Trustees to retain Halderman or Schrader to sell the Dague Farm at public auction and remand for further proceedings.

[17] Reversed and remanded.

Kirsch, J., and May, J., concur.